Leavenworth *v.* Packer.

[CLINTON GENERAL TERM, May 7, 1867. *James, Rosekrans* and *Potter,* Justices.]

---

## LEAVENWORTH *vs.* PACKER and others.

An agreement was made between the parties, by the terms of which the defendants were to send to the plaintiff four hundred and fifty tons of coal, of the kinds specified, at $5.50 per ton, during the season of navigation, after August 6, 1862. The defendants broke the agreement, on their part, in that they forwarded but two hundred and sixty-six and a half tons, and that one hundred and sixty-five and a half tons of the coal forwarded was of an inferior quality. The plaintiff did not refuse to accept the one hundred and sixty-five and a half tons, nor offer to return the same. In an action to recover damages for the non-delivery of the balance of the coal contracted for, and for the inferior quality of the one hundred and sixty-five and a half tons, the referee allowed damages on account of the quantity not delivered, at the rate of $2 a ton, which was the advance in the price, and refused to allow damages on account of the bad quality of the one hundred and sixty-five and a half tons delivered, on the ground that the plaintiff did not refuse to accept it, nor offer to return it. *Held* that the conclusion of the referee was correct, and the judgment directed by him was affirmed.

Leavenworth *v.* Packer.

*Held, also,* that the referee was right in allowing the defendants to recoup, not only the advances made by them for freight and tolls paid for the plaintiff, but also the balance due for the coal actually shipped, over and above the sum advanced by the plaintiff in payment therefor.

Upon an executory contract for the sale and delivery of personal property, the general rule is, that where the article furnished does not correspond with the article promised in the contract, the vendee, if the defect is clearly apparent, may refuse to accept, and it is his duty, in self protection, to refuse to accept it. If the defect is not at first apparent, he is entitled to an opportunity, and a reasonable time, to ascertain its defects. If defects are then discovered, he is bound to give notice to the vendor, or to offer to return the property.

The retention, or use, or conversion of the property, by the vendee, is an admission on his part, of his satisfaction that the article received is in conformity to the agreement; and such use or conversion, without notice of defects, is a legal waiver of all objections, and estops him from the right to recover damages for its defects.

Distinction between counter-claim and recoupment.

THIS is an appeal from a judgment entered upon the report of a referee. The plaintiff brought the action for breach of contract by the defendants on their agreement to deliver a quantity of coal. The plaintiff is a dealer in coal at Amsterdam, Montgomery county. On the 6th of August, 1862, he received from the defendants a proposition, as follows: " We will let you have, at Elizabethport, 100 tons of sugar loaf lump ; 250 tons sugar loaf egg ; 100 tons sugar loaf stone, at $5.25 per ton, on board, and will take up the boats for the same, as far as in our power, or load any you may send. This is to be the price for August, and the season, with any advance of tolls after 1st September." The plaintiff accepted, orally, this agreement at the time. In pursuance of this agreement the defendants delivered 266½ tons of coal, of which, one load, 165½ tons, was of very inferior quality. The defendants neglected and refused to deliver the remainder of the 450 tons, as per agreement. The plaintiff, in three different payments, advanced $1050 on the contract ; and the defendants advanced $234.41 for freight and tolls. The plaintiff claimed damages for the

non-delivery of the balance of the quantity of coal, and for the damages by the inferior quality of the load of $165\frac{1}{2}$ tons that was delivered. The referee allowed damages on account of the quantity not delivered, at the rate of $2 per ton, which was the advance in the price; and refused to allow damages on account of the bad quality of the $165\frac{1}{2}$ tons delivered, on the ground that the plaintiff did not refuse to accept it, nor offer to return it. He therefore allowed to the defendants the full price of the $266\frac{1}{2}$ tons of coal delivered, to which he added $234.41 paid by them for freight and tolls, and allowed to the plaintiff $1050 advanced, and $367, with interest, for damages on the quantity of coal not delivered; leaving a balance of $552.81 in favor of the defendants, for which sum judgment was rendered in the defendants' favor.

*D. P. Corey,* for the appellant.

*Churchill, Welch & Woobury,* for the respondents.

*By the Court,* POTTER, J. It is very clear, from the evidence, as well as by the finding of the referee, that there was a contract between the parties; and that by its terms the defendants were to send to the plaintiff 450 tons of the coal, specified, at the sum of $5.50 per ton, in the season of navigation, after August 6, 1862. It is also clear that the defendants broke their said agreement, in that they forwarded but $266\frac{1}{2}$ tons; and that $165\frac{1}{2}$ tons of the coal forwarded was inferior in quality to that, which by the terms of the contract, they were bound to furnish. The only remaining question that seems to be in the case is, upon the law, to wit, whether the referee has allowed to the plaintiff the full amount of damages he sustained by the defendants' refusal or omission to perform their said agreement.

This contract must be regarded as an executory contract

for the sale and delivery of personal property. The general rule in such case is this: where the article furnished does not correspond with the article promised in the contract, the vendee, if the defect is clearly apparent, may refuse to accept, and it is his duty in self-protection, to refuse to accept it. If the defect is not at first apparent, he is entitled to an opportunity and a reasonable time, to ascertain its defects. If then, defects are discovered, he is bound to give notice to the vendor, or to offer to return the property. The retention, or use, or conversion of the property, by the vendee, is an admission on his part of his satisfaction that the article received is in conformity to the agreement; and such use and conversion, without notice of defects is a legal waiver of all objections, and estops him from the right to recover damages for its defects. (*Reed* v. *Randall,* 29 *N. Y. Rep.* 358.) This principle applies to the point in the case, that the 165½ tons delivered was inferior, and almost valueless coal. True, the rule applies with some severity, as in this case, to the article of coal, to a retailer, who, without the ability to judge of quality from sight, retails it out to customers immediately, and thus deprives himself of the opportunity to test its quality before conversion. But the law is not therefore unjust; the vendee is not without remedy in such case. As soon as it has been tested by others and found to be inferior, he may then give notice to the vendor of the imposition, and this is equivalent to a refusal to receive it, and this will be regarded, in law, as the reasonable time allowed for the purpose of examination. At all events, he is bound to give such notice before he commences his action for such a defect. I think, therefore, the referee did not commit an error, in law, in holding that in this particular the plaintiff had no right to recover damages for the inferior quality of the coal which had been accepted and converted without notice of defect.

The referee allowed to the plaintiff his damages for the

non-delivery of the $183\frac{1}{2}$ tons of coal, a part of the contract. The amount thus allowed seems to be in accordance with the evidence of damage in that regard. It is an adjudication of the breach, and is the amount authorized by the evidence, and is, therefore, right.

The only remaining point, of objection upon the merits, taken by the plaintiff, is, that the referee allowed the defendants to recoup, not only the advances made by them for freight and tolls paid for the plaintiff; but also the balance due for the coal actually shipped, over and above the sum advanced by the plaintiff in payment therefor. The plaintiff claims, and this seems to be the ground upon which he bases his action, that inasmuch as the contract to deliver the coal was an entire contract, which was broken by the defendants, the latter had no cause of action against the plaintiff for coal delivered, or for advances made thereon; and of course could not have recovered, without showing an entire performance on their part; and inasmuch as the breach of the contract by the defendants was found by the referee, they had no claim against the plaintiff upon which they could recover, or which they could recoup. It is doubtless true, that had the defendants sued the plaintiff in an action at law, to recover for coal delivered upon such a contract, they would have failed by reason of their non-fulfillment of the entire contract. The defenses set up by the defendants, are not technically, recoupment; nor are they so called in their answer; but counter-claims; which differ in some respects from recoupment. A counter-claim is a kind of equitable defense which is permitted under the provisions of the Code, (§ 150,) to be set up, when it arises out of the contract set forth in the complaint; it is broader, and more comprehensive than recoupment, (*Vassear* v. *Livingston,* 3 *Kern.* 256,) though it embraces both recoupment and set-off; and it is intended to secure to a defendant all the relief which either an action at law or a bill in equity, or

Leavenworth *v.* Packer.

a cross-bill would have secured on the same state of facts. (2 *Duer*, 642.   6 *Bosw.* 458.)   But it must be something that resists or modifies the plaintiff's claim.   (21 *N. Y. Rep.* 196.)

With these authorities as to counter-claim we see that the plaintiff brought his action to recover damages for the breach of a contract.   The contract was partly fulfilled; to that extent he cannot complain.   It was partly broken; to that extent the referee has made him good by damages for the breach.   In the theory of the law he is fully protected.   He has recovered all he has lost.   But it is not equity that he shall be rewarded beyond this.   The action does not sound in tort, and there is seen no good reason for inflicting a further penalty upon the defendants than that of making the plaintiff whole for the injury.   The defendants have been called upon to pay these damages, and the plaintiff still has in his hands after deducting all the damages for breach, the value in property of the defendants equal to the sum found in the report of the referee.   Equity and justice demands that this should be paid.

If the referee is right in his finding of facts, as he seems to be, I think his conclusions of law are right, and the judgment must be affirmed.

[ST. LAWRENCE GENERAL TERM, October 1, 1867. *James, Rosekrans* and *Potter*, Justices.]