Isaac L. Lyon v. Donald A. McDonald, John C. McDonald and Bernard Rich.

*Settlement of mortgage debt.*

A foreclosure suit depending upon the question whether or not the mortgage debt had been settled, was determined in complainant's favor upon evidence that complainant had always claimed it as an existing obligation, and that defendant fully understood that this claim was made; that neither note nor mortgage had been surrendered, and no steps had ever been taken to procure their cancellation or release; that the mortgager had assured complainant that he had fully informed a second mortgagee of the existence of the prior

mortgage, and of the reasons why complainant insisted on his right to hold it; and that defendant had made an agreement with complainant in which he set out the existence of a debt, including the mortgage as securing part of it and as belonging to complainant.

The burden of showing that the amount due on a mortgage under foreclosure is less than complainant claims is on the defendant.

A foreclosure decree was given for the amount of a proposed compromise which had never amounted to more than an offer on either side, where the court considered the amount a sufficient approximation to the debt to fairly represent it at the time the compromise was proposed.

Appeal from Iosco. (Tuttle, J.) June 22.—October 10.

FORECLOSURE bill. Complainant appeals. Reversed.

*Edw. W. Pendleton* and *F. H. Canfield* for complainant.

*C. S. Henry* and *Hatch & Cooley* for defendants.

CAMPBELL, J. Complainant filed his bill to foreclose a mortgage dated July 25, 1873, for $5239, payable in one year with interest at 10 per cent. The bill was filed June 24, 1882, when the note had become outlawed, unless kept alive by payments, as there was no proof of such a new promise as would satisfy the statute. Complainant only relies on the land.

The answer, which was unsworn, sets up the statute of limitations as against personal liability, and averred payment, but without any particulars of time or manner. It also claimed, in the form of the common counts, a set-off, without particulars. The defense chiefly relied on was payment by a transaction in 1874.

On the same day when the note was given, July 25, 1873, an agreement was made between Donald A. McDonald and complainant whereby McDonald agreed to cut and deliver on or before July 18, 1874, 1500 thousand feet of white pine timber, cut the full length of the tree, and averaging not less than 650 feet to the stick, at nine dollars a thousand, to be properly marked and scaled by L. B. Wheeler at Detroit or Toledo,—the logs to be cut on lands of Lyon,

specified. The agreement set out that McDonald was in-debted on two notes (of which one was the note in question) to the amount of $9000. It was agreed that if McDonald faithfully carried out the contract, and delivered the 1500 thousand feet of long pine timber on or before July 15, 1874, Lyon would cancel the debts, and assign to any one whom McDonald should select, the securities held for the same, and pay any further balance, if there should be any. In addition to the mortgage in suit, the remaining note was also secured by collaterals.

It is not claimed that this contract was carried out accord-ing to its terms. The lumber furnished was not all white pine, but partly Norway. It did not come up to the required average in size. It was also discovered that a part of it was cut on land in which McDonald was not interested, instead of on the specified lands in which he was equitably interested.

The contract, therefore, being unfulfilled, would not by the imperfect fulfillment operate as a payment, unless by some arrangement and settlement. Upon this the parties are at variance. McDonald claims that a certain deduction was agreed on and the matter closed so as at any rate to cancel the debts referred to. Complainant testifies to the contrary, and that the mortgage was never understood to be canceled, and was kept alive through their subsequent dealings, and that he never received such sums or payments as to either pay it or balance it by counter-claims or set-offs.

In this conflict we are obliged to consider the subsequent treatment of it between the parties. The record shows abundantly that complainant always claimed it as an exist-ing obligation and that McDonald fully understood that this claim was made. It also appears that no surrender was made of either note or mortgage, and no steps were ever taken to procure a cancellation or release. It is not claimed, and there is nothing which goes to make it probable, that if not settled in 1874, under the timber contract, it was ever settled at all.

In November, 1874, after that transaction was ended, some controversy arose with a Mr. Morse, to whom Mc-

Donald had given a subsequent mortgage, and who claimed to have been ignorant of the mortgage in suit. On this occasion McDonald wrote two letters assuring complainant that he had fully informed Morse of the existence of the mortgage, and of the reasons why complainant insisted on his right to hold it. And on the 17th day of November, 1874, McDonald signed and delivered to complainant and E. G. Merrick a new agreement to cut and supply timber, in which he distinctly sets out the existence of a debt of $7500, including this mortgage as securing a part of it and as belonging to complainant. This document he disputes, but in our opinion the testimony establishes its genuineness, and his understanding of it, beyond serious question.

If this is so, it is very certain the mortgage was not paid, and the defense of payment is not made out. Complainant is entitled either to the whole amount secured, or to so much at any rate as remained unpaid on balance of accounts. And as the burden of reducing it is on defendants, we must allow it except as shown to require reduction.

The defendants have not in their case or argument thrown much light on any of the subsequent arrangements in such a way as to make out any specific balance or set-off. But in July, 1882, McDonald offered to close up a proposed compromise of $3500, offered in January, 1880. This was not done, and it was a mere offer on either side. But we are inclined to think that this amount may be fairly regarded as a sufficient approximation to represent the debt in January, 1880, and we think the decree below should be reversed with costs, and a decree entered for complainant with interest from January 7, 1880, at 10 per cent.

GRAVES, C. J. concurred.

SHERWOOD, J. The bill in this case is filed to foreclose a mortgage given on the 25th day of July, 1873, by the defendant Donald A. McDonald, to the plaintiff, to secure payment of the sum of $5239.09, with interest at ten per cent., in one year from the date thereof, according to the

condition of a certain note bearing same date, for same amount, and payable at the same time.

The bill alleges that the defendants John C. McDonald and Bernard Rich claim some interest in the premises as subsequent purchasers, tenants or incumbrancers, but claim no rights in opposition to the mortgage. The defendants made their joint and several answer, wherein they all say and aver that the said note and mortgage were fully paid and satisfied by the defendant Donald A. McDonald, and that the maker thereof did not owe anything thereon at the time the bill was filed. They further claim in their answer that said complainant was indebted to the defendant Donald A. McDonald, at the time this suit was commenced, under all the common counts in assumpsit, in an amount greater than the amount claimed to be due upon this note and mortgage, and ask that the same, or so much thereof as may be necessary for the purpose, be set off against any claim made to appear upon the note and mortgage against D. A. McDonald. The defendants also aver that the complainant's action for any claim upon the note is barred by the statute of limitations.

To this answer the complainant filed a general replication. The case was heard on pleadings and proofs, and a decree was rendered therein by the circuit judge dismissing the bill, with costs to the defendants, and complainant appeals.

The principal question in the case is, have the note and mortgage been paid?

At the time the note and mortgage were made, the defendant Donald A. McDonald was indebted to the plaintiff in the sum of about nine thousand dollars, and owned the property mentioned in the mortgage in this suit, and an interest in a large tract of pine lands, known as the Talbot lands, in township 25 north, of range 8 east, and also had a large amount of personal property, consisting of horses, sleds, harness and camp equipments for lumbering. And it appears that, up to that time, he had always had great confidence in the complainant, and, in return, enjoyed his confidence. In order to secure the payment of the balance of

his indebtedness to the plaintiff, not covered by the mort-
gage, he gave a bill of sale of his personal property to the
complainant, and complainant thus having under his con-
trol all the defendant D. A. McDonald's property from
which the money was to be made to satisfy the complain-
ant's claims, the latter entered into the following contract
with said defendant:

"An agreement made this twenty-fifth day of July,
eighteen hundred and seventy-three.

For and in consideration of one dollar to me in hand paid
by I. L. Lyon, I, Donald A. McDonald, of Au Sable, Mich-
igan, do hereby agree to cut and deliver to tug, in chains,
on or before July 18, 1874, one million and five hundred
thousand feet of sound, merchantable white pine timber,
cut full length of tree, averaging not less than six hun-
dred and fifty feet to the stick; timber to be marked
with mark designated by said Lyon, and to be scaled by L.
B. Wheeler, of Port Huron, at point of delivery, Detroit,
or Toledo, Ohio; said timber to be cut from land owned by
said Lyon, in township 25, range N. 8 east; price to be nine
dollars per thousand feet, board measure. Said McDonald
is indebted to said Lyon in the sum of nine thousand dollars
or thereabouts, as shown by two notes held by said Lyon for
collateral security, and for the payment of those notes said
Lyon holds a mortgage on certain real estate in Au Sable
owned by said McDonald, known as lot 3, in block 2 of
Pierce's subdivision of lot 6, in sec. 8, in township twenty-
three N., R. 9 east. Also holds a bill of sale of the horses,
sleds and camp equipments and appurtenances and harness,
etc., used by said McDonald in lumbering. Also the right,
title and interest on certain pine lands in town 25 N.,
R. 8 east, bought of H. G. Goddard and J. Talbot.

Said McDonald agrees to cut, skid and haul the above
amount of timber to Pine river, and bank the same, so that
it can be watered early in the spring, and before he cuts
and hauls any timber for any other party or parties.

If said McDonald faithfully and truly carries out the
above-mentioned agreement, and delivers to I. L. Lyon the
one million five hundred thousand feet of long pine timber
on or before July 15th, 1874, said Lyon agrees to cancel said
McDonald's indebtedness, and pay him any balance that
may be due, and assign to him, or to whom he may direct,
whatever securities said Lyon may hold, as mentioned above,

and all right, title and interest in above-mentioned pine lands.

*Detroit, July* 25, 1873.                    D. A. McDONALD.
I. L. LYON."

Under this contract the defendant Donald A. McDonald proceeded to cut and deliver to the complainant the timber therein mentioned, and, as the testimony shows, did cut and deliver to the complainant 1,496,930 feet, which was only 3070 feet less than the amount contracted to be delivered. The complainant received this timber and sold the same to Toledo parties. At the price mentioned in the contract, it amounted to the sum of $13,472.37. The indebtedness of Donald A. McDonald, as claimed by him, to the complainant, was at this time $12,152.19.

The defendant D. A. McDonald claims that in the month of July, 1874, after he had delivered the timber above mentioned, he went to the office of complainant in Detroit, and there had an accounting with him under the contract, and that the accounts of the parties as kept by complainant were there consulted and the above footings ascertained. That complainant then found some fault with the timber delivered, because it did not measure out the size contracted for, and was not all of the qualities and kinds promised, and in consequence claimed a deduction of $2000 should be made. This McDonald says was not acceded to by him, but an agreement was finally reached whereby he was to deduct the excess of his claim over the complainant's, making it equal to that of complainant, and on those terms a settlement was had, and that the complainant thereupon agreed to discharge the mortgage, give up McDonald's note, release the bill of sale, and convey to defendant D. A. McDonald the pine lands mentioned in and as required by the contract.

Of course, if this statement is correct, then the complainant's note and mortgage are paid, and he must fail in his suit. This statement, however, is denied by the complainant, and upon the issue thus presented on the statements of the parties most of the testimony in the case was given. The issue is really one of fact, its decision depending mainly

upon the weight to be given to the testimony of the parties,. and it has been decided by the circuit judge in favor of the defendants. His decision, usually, upon the facts in such cases, is regarded with much consideration, because of his supposed acquaintance with and nearness to the parties and their witnesses, which gives him better opportunities to judge of the credibility of their testimony, and when the evidence is close it is usually sufficient to determine the pre-ponderance.

In any cases, however, where any of the reasons or elements should appear to be wanting, which are necessary to give to the decision at the circuit the significance generally accorded to it, then it becomes the duty of this Court, on reviewing the case, to consider the testimony in detail, without the aid furnished by the decision of the circuit judge. On this occasion, however, the question involved may be disposed of without resort to such aid, though it exists in the case. The record very clearly satisfies me that the conclusion arrived at by the court below is correct, and fully supported by a decided preponderance of the evidence.

By the terms of the contract made with complainant it appears the parties expected that, when it was completed, the complainant would have more than enough of defendant D. A. McDonald's property to satisfy his claims, and he promises to pay the balance to McDonald or to his order. It was also agreed between the parties in the contract that McDonald's indebtedness should be paid by the delivery of the timber, and the application was to be made by complainant. The complainant received the timber, appropriated and sold it; this is not denied by him. There is no testimony in the case showing that he received it in any other manner than under the contract. Neither does it appear that he had any authority from McDonald to receive it in any other way, or to apply it to any other purpose, than in payment of complainant's claims mentioned in the contract; and while the complainant denies the settlement claimed by McDonald, he does not deny the statement of the accounts as he had kept them. When he was upon the stand giving

his testimony, he was asked by counsel for defendant, in reference to the account due him from McDonald, the following question : " This Exhibit 3 finds a total of $12,-152.19, (with the exceptions you have named). Do you believe that to be a correct statement of the account of the indebtedness of McDonald to you at that time ? " *Answer.* " As far as I can remember, sir, I should think it might be ;" and referring to the number of feet of timber delivered by McDonald, he was asked : " Do you admit the accuracy of the number of feet (1,496,930) as measured in the scale bill ? " *Ans.* " Yes, sir ; I accept Mr. Wheeler's statement as correct." Mr. Wheeler was the complainant's scaler.

The exception referred to in the first question does not relate to the indebtedness on the mortgage or bill of sale mentioned in the contract. Now, if it be conceded that $3000 should have been deducted from McDonald's account for timber because of its not being of sufficient size,—and that is the most claimed in any of the complainant's figuring,—the complainant would still be owing him in July, 1874, $10,472.37, which was more than enough to satisfy the note and mortgage and discharge the bill of sale. From the premises conceded in the complainant's testimony it is difficult to make any figures warranted by the testimony which would not show the complainant's note and mortgage paid, provided the value of the timber delivered was to be applied to such payment ; and that question, as we have already said, is settled by the contract under which the timber was received by the complainant.

The question is made, was the complainant bound to account for the timber at the price mentioned in the contract, it being not all of the particular kind of pine, and some of it smaller size than contracted for ? The testimony shows that about one-seventh of the timber was Norway instead of white pine, and that the average of the timber delivered was smaller than mentioned in the contract, but there is no testimony showing that any of the timber before or when received by the complainant was objected to by him on account of quality or size ; but it does show that he knew of the

discrepancy in quality and size when he received the same, sent it to a distant market in another state and sold it, and not until called upon to settle and account for it was any objection made of any kind by complainant.

I think, under such circumstances, he must be held to have waived the failure to comply with the contract in the respect now complained of, and held to account for it at the contract price. *Fisher v. Samuda* 1 Camp. 190; *Grimaldi v. White* 4 Esp. 95; *Milner v. Tucker* 1 C. & P. 15; *Leavenworth v. Packer* 52 Barb. 132; *Reed v. Randall* 29 N. Y. 358; *Sprague v. Blake* 20 Wend. 61; *Hargous v. Stone* 5 N. Y. 73; 2 Kent's Com. 480; 1 Pars. Cont. 475; *Hubbardston Lumber Co. v. Bates* 31 Mich. 158; *De Armand v. Phillips* Walk. Ch. 186; *Davis v. Downs* 4 Mich. 530; *Moore v. Detroit Locomotive Works* 14 Mich. 266; *Hall v. McEwen* 19 Mich. 95. This would entitle McDonald to quite a large sum in excess of his indebtedness to complainant; but the defendant's testimony shows he forgave this excess to complainant when he settled with him, on account of the deficiency in the size of the timber delivered. This settlement, however, is denied by the complainant. I have carefully examined the testimony upon this subject, and without going into a discussion of the evidence further, I am unable to avoid the conviction that it preponderates in favor of the position taken by defendants' counsel, viz., that the account was correctly stated at the complainant's office in Detroit and a settlement was there agreed upon.

The complainant does not deny but that his account, so far as it appears in the statement of the same then made, was correct, and concedes the correctness of the statement he then made of D. A. McDonald's account. The subsequent action of complainant in deeding the lands to McDonald agreed to be conveyed to him by the terms of the contract upon the completion thereof, together with his letter to Mr. Morse of July 28, 1874, in which he says: "You probably received my letter in reference to D. A. McDonald's settlement. My matters are arranged with him

satisfactorily,"—seem to me inconsistent with any other view that can be taken of the case.

The effort to show that the defendant D. A. McDonald, in cutting and delivering the timber which he did, was asking complainant to pay him for his own timber, and committed trespass by taking some of the same from lands of another where he was not privileged to go, was not successful, and I think it sufficiently appears that the lands from which the timber contracted to be delivered was taken, were at the time held by McDonald under contracts for purchase, either written or verbal, upon the performance of which he would have been, in equity, entitled to conveyances, and it is a significant fact in this case, in this connection, that these lands have all, since the execution of the contract, been deeded to the defendant D. A. McDonald by or through the instrumentality of the complainant.

Much is claimed for an admission of the existence of the note and mortgage in suit as unpaid, contained in what purports to be an agreement between the complainant and defendant D. A. McDonald, and signed by him, dated November 17, 1874; but this is sufficiently explained by McDonald, and the explanation is fully confirmed by the fact that no rights were ever claimed under the instrument by either party.

It is claimed by counsel for complainant, as a circumstance against defendants, that complainant has been suffered to retain possession of the note and mortgage until suit was brought. Under the circumstances of the case, this fact cannot be permitted to make against the defendants. Great confidence had always been reposed in complainant by McDonald, and when the settlement was made the parties were in Detroit, and the bill of sale was filed and the mortgage was recorded in a distant county; the defendant had the complainant's promise to discharge these claims; the debt was paid. He had for years trusted the complainant, not only with his papers, but with the title to his property. Certainly it was but reasonable to expect complainant to redeem his promise made to his friend to discharge these

securities; and the excuse complainant made for holding the note and mortgage afterwards was plausible and consistent with his retention of them; and ever since then the defendant has been trying to get up these securities.

The question of set-off and the note being barred by the statute of limitations it is unnecessary to consider.

I think the decree of the circuit court should be affirmed with costs.

COOLEY, J. did not sit in this case.