WILLIAM A. PARKE et al., Appellants, *v.* THE FRANCO—AMERICAN TRADING COMPANY, Respondent.

Plaintiffs contracted with defendant to furnish and prepare the materials for the erection of certain buildings, at an agreed price. By a fraudulent device of plaintiffs' employes, defective material, which had been rejected by defendant, was received and used. On discovery of the fraud defendant paid the amount then due, less $20,000, which was retained. In an action brought to recover the $20,000 retained, plaintiffs' testimony was to the effect that they were ignorant of the fraud, and that upon its discovery it was agreed they should allow to defendant any damages sustained thereby, the $20,000 being retained as indemnity for that purpose; also, that they should proceed with the performance of the contract; that the defendant would send back the defective material, and plaintiffs supply its place with good material. Plaintiffs continued in the performance of the contract, and defendant received from them and paid for the residue in quantity of material. The defective material was not returned, and it did not appear but that it was used in the buildings. The trial court directed a verdict for the defendant. *Held*, error; that the right to go to the jury was not dependent upon complete performance, as this might be waived subject to defendant's right to recover the damages sustained; that the evidence tended to establish such waiver, after full knowledge on defendant's part of all the facts, and so the question was one of fact for the jury.

(Argued January 23, 1890; decided March 21, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, made April 4, 1887, which overruled plaintiffs' exceptions, ordered to be heard in the first instance at General Term, and denied a motion for a new trial.

This action was brought to recover a balance alleged to be due upon a contract between the parties, the substance of which, as well as the material facts, are stated in the opinion.

*Edward W. Shepard* for appellants. Defendant, by insisting upon going on with the contract, waived any general defense arising out of the former fault. (*Murphy* v. *Buckman*, 66 N. Y. 297; *Cohen* v. *Platt*, 69 id. 348; *Reed* v. *Randall*, 29 id. 358; 81 id. 345.)

*George W. Seligman* for respondent. The verdict was properly directed for the defendant on the grounds that the uncontradicted evidence established the fact that the contract was not performed, and that no cause of action was proven. (*Smith* v. *Brady*, 17 N. Y. 173; *Cunningham* v. *Jones*, 20 id. 486; *Bonesteel* v. *Mayor, etc.*, 22 id. 162; *Catlin* v. *Tobias*, 26 id. 217, 222; *Walker* v. *Miller*, 29 id. 375, 379; *Glacius* v. *Black*, 50 id. 145; *Crane* v. *Knubel*, 61 id. 645; *Phillip* v. *Gallant*, 62 id. 256, 264; *Woodward* v. *Fuller*, 80 id. 312; *Dauchy* v. *Drake*, 85 id. 407; *Nolan* v. *Whitney*, 88 id. 648; *Sinclair* v. *Tallmadge*, 35 Barb. 605.) It is no defense for the plaintiffs to urge that this fraud was perpetrated by Mr. Parkin, their superintendent, without their knowledge or consent. (*Griswold* v. *Haven*, 25 N. Y. 595, 597, 601; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 30; *C. C. Bank* v. *Bradner*, 44 id. 680, 687.; *Armour* v. *R. R. Co.*, 65 id. 111; *Bank* v. *R. R. Co.*, 72 id. 188; *Bank* v. *R. R. Co.*, 33 Hun, 589; *Bennett* v. *Judson*, 21 N. Y. 238; *Baker* v. *U. M. Life Ins. Co.*, 43 id. 283, 288; *Hathaway* v. *Johnson*, 55 id. 93, 96; *F. S. Institution* v. *Nat. Bank*, 80 id. 162, 170; *Garner* v. *Mangam*, 93 id. 642; *Krumm* v. *Beach*, 96 id. 398, 404, 405; *Durst* v. *Burton*, 47 id. 167, 174.) To establish a waiver the plaintiffs were bound to prove that the defendant, with full knowledge of all the material facts, actually waived the fraud, and the right to hold them to a performance of their contract. (*Newbery* v. *Furnival*, 56 N. Y. 638; *People's Bank* v. *Mitchell*, 73 id. 406, 413, 414; *Robertson* v.

*M. L. I. Co.*, 88 id. 541; *Frost* v. *Thompson*, 18 Ill. App. 410; *D. Co.* v. *Harding*, 49 N. Y. 321; *Smith* v. *Brady*, 17 id. 189; *Reed* v. *Board of Education*, 4 Abb. Ct. App. Dec. 24; *Catlin* v. *Tobias*, 26 N. Y. 217; *Paige* v. *Ott*, 5 Den. 406; *Champlin* v. *Rowley*, 18 Wend. 187, 192–194; *Dauchy* v. *Tutt*, 19 Wkly. Dig. 490; *Crane* v. *Knubel*, 61 N. Y. 645, 647; *Gardner* v. *Clark*, 21 id. 399, 404; *Belknap* v. *Bender*, 75 id. 446, 450; *Shupe* v. *Hamilton*, 3 Daly, 462, 471; *Ripley* v. *A. Ins. Co.*, 30 N. Y. 136, 164; *Corse* v. *Peck*, 102 id. 513; *Struder* v. *Bliestein*, 48 Hun, 577; *Palmer* v. *Kelly*, 56 N. Y. 637.) The verdict was, also, well directed, on the ground that the fraud vitiated the performance of the contract, and that plaintiffs cannot maintain any action whatever, based upon their own fraud, or to recover therefor. (*Sangs* v. *Codwise*, 4 Johns. 599; 2 Parsons on Cont. 782; *Dermott* v. *Jones*, 2 Wall. 1, 9; *Crane* v. *Knubel*, 61 N. Y. 655; *Mead* v. *Degolyer*, 16 Wend. 639.) The measure of the defendant's damages, recoverable from the plaintiffs, in consequence of their frauds, would be the loss of profits on its contract with the canal company, occasioned thereby, as well as the forfeiture of its guaranty fund. (*Booth* v. *S. D. R. M. Co.*, 60 N. Y. 487, 492; *Messmore* v. *N. Y. S. & L. Co.*, 40 id. 422.) Evidence that the inspectors were incompetent, or the inspections unfair in the opinion of the witness, or that the material and workmanship, rejected by the inspectors, were good, etc., was properly excluded. (*McParlin* v. *Boynton*, 8 Hun, 449; 71 N. Y. 604; *Butler* v. *Tucker*, 24 Wend. 447, 449.) The question as to what the contract required was one of law for the court, not of fact for the jury. (*Glacius* v. *Black*, 67 N. Y. 563; *Dwight* v. *G. L. Ins. Co.*, 3 N. Y. S. R. 115.)

POTTER, J.   The agreement of the 1st of June, 1883, between the parties, by which the plaintiffs agreed to furnish and prepare materials for the construction of and to erect one hundred and twelve buildings along the line of the proposed Panama canal, for $163,000, was so modified by contract of

December 18, 1883, as to release the plaintiffs from their undertaking to erect the buildings, and the consideration of performance on their part of the contract so modified was reduced to $113,000. With a view to the observance of the provisions of the contract relating to the quality and character of the materials, and their preparation, to be furnished and performed by the plaintiffs, inspection was to be made by agents appointed for that purpose. They were designated by the defendant, and proceeded to examine the materials subjected to their inspection, and by the use of an instrument the inspectors placed upon the materials marks indicating approval and rejection, as they determined them to be or not to be such as the contract required. The delivery commenced August, 1883, and soon thereafter the inspection so made was partially defeated by the act of the employes of the plaintiffs in procuring a die similar to that of approval, used by such inspectors, and by marking with it materials which had been rejected by the latter, after removal of the marks denoting such rejection. This was carried on by the plaintiffs' employes without discovery by the defendant until January 9, 1884. In the meantime a considerable portion of the prepared materials had gone forward, some of which consisted of those so rejected and fraudulently marked with the false die. At the time of this discovery there was one vessel loaded and another partially loaded with the materials in the harbor near Hunter's Point, the place of the plaintiffs' lumber yard, from which they were taken for transportation to the Isthmus. The defendant thereupon paid to the plaintiffs the amount, by the terms of the contract, then payable, less $20,000 retained by the defendant on account of the delivery and shipment made of the falsely marked lumber. The plaintiffs, however, continued in the performance of the contract, and the defendant received from them the residue in quantity of lumber, and paid them for all delivered subsequently to that time. The moneys, therefore, paid by the defendants to the plaintiffs altogether amounted to $93,000 ; and this action was brought to recover the $20,000 retained as before mentioned. The plaintiffs were chargeable

with a gross violation of their contract, which, unless in some manner waived by the defendants, constituted a defense to the action. The mere direction of the defendant to the plaintiffs to proceed with the performance and completion of their contract would not constitute a waiver, but the evidence given by the plaintiffs tended to prove that something more than that took place on and after the discovery of the fraudulent device before referred to, used by the plaintiffs' employes. When their attention was called to it by defendant, the plaintiffs asserted their ignorance of the false marking and their personal innocence in respect to it, and upon the trial they testified to the truthfulness of such assertion; and further, their evidence tends to prove that at the time the $20,000 was reserved it was understood, and the arrangement between the parties was such that the plaintiffs should allow to the defendant such damages as it had sustained by reason of the delivery of the rejected materials, which the defendant had been induced to take and transport to Panama by means of the use of the false die; that the sum retained was reserved as indemnity for that purpose, and that the plaintiffs should, in view of such arrangement, proceed with the performance of the contract, and that at the request then made by the plaintiffs of the defendant the latter should send back, at the expense of the plaintiffs, lumber not within the requirement of the contract, which had been delivered to the defendant, and that the plaintiffs would supply its place with other lumber. The evidence on the part of the defendant was not in harmony with that of the plaintiffs in some essential respects, but for the purposes of the question on this review it is unnecessary to refer specifically to it. The quantity of material consisting of prepared lumber for the buildings, was upward of two million feet. There seems to have been no question about the delivery of the quantity required by the contract. Nor does it appear that it was not all appropriated and used for the purpose contemplated by it. The delivery and shipments were made, from time to time, from a date in August, 1883, until in February, 1884, and about one-half of it was

transported from the place of shipment to the Isthmus after January 9, 1884. The trial court held that there was no question for the jury and directed a verdict for the defendant. And upon the exception taken to such ruling the main question arises for consideration. If the right to submit any question of fact to the jury was dependent upon the complete performance of the contract by the plaintiffs, the action was properly disposed of at the trial, because it cannot be said that the delivery, shipment and use, in the construction of the buildings, of the fraudulent materials produced acceptance of them by the defendant. Although it does not appear to what extent the plaintiffs proceeded with the erection of the building before the modification of the contract, relieving them from performance in that respect, was made, it does appear that they had for some time sixty or eighty men on the Isthmus engaged in the construction or doing work preparatory to the erection of the buildings there. The time of performance provided by the contract was nine months from its date, which would not then expire until the first of March. Whatever of the falsely-marked lumber was put into the construction of the buildings without the prior knowledge of the defendant and approval of its use, would not be deemed accepted by the fact that the defendant or the Panama Canal Company took possession of and used the buildings after they were erected. The defendant could still insist that the plaintiffs had failed to perform their contract, by way of defense to any action brought by them upon it, or otherwise to recover compensation for the lumber. (*Smith* v. *Brady*, 17 N. Y. 173.) But full performance of a contract may be waived by the parties so as to enable the one against the other to obtain relief for partial performance; and so may defective performance be accepted, subject to the right of the party damnified to recover or recoup damages for the loss he has sustained by reason of it. In such case the right of forfeiture is denied to the party, his right exists in the contract, and his remedy for relief rests in his assertion and proof of damages for the defective performance by the other party whose right, sub-

Opinion of the Court, per Potter, J.

ject to such claim, remains effectual. (*Avery* v. *Willson*, 81 N. Y. 341.) It is not the purpose or within the province of the court on this review, to express any opinion as to the facts which the evidence established, but it is to determine whether there was evidence which required the submission of any question of fact to the jury for their determination. There was evidence on the part of the plaintiffs tending to prove waiver of the defective performance of the contract by them; and that this was done by the defendant after it had knowledge of all the facts essential to such effect so far as to deny to it the right of forfeiture for breach. This is without prejudice to such claim as the defendant may have for damages resulting from the fraudulent means employed and effectually used in the delivery, and causing the shipment of lumber rejected by the inspectors, and lumber not of the character and quality of that which the plaintiffs undertook to furnish. The question of personal good faith of the plaintiffs in respect to the fraudulent acts of their employes, so far as it and the assertion of their innocence to the defendant may be deemed to have been involved in the consideration which led to the arrangement following the discovery, assuming that the agreement or understanding claimed by the plaintiffs to have been made was in fact made, was a question for the jury, and the court was requested to submit it to them. The court was also requested to submit to the jury the question of waiver in various forms, and the question of damages resulting to the defendant. Whether there was a waiver was a question of fact which should have been submitted to the jury; and if they found that in the affirmative, the further question of damages, in behalf of the defendant, would arise for them to determine. The conclusion follows that the exception to the direction of a verdict for the defendant was well taken.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except Follett, Ch. J., dissenting, and Haight, J., not voting.

Judgment reversed.