(153 App. Div. 562.)

### HALL v. NEW HARTFORD CANNING CO., Limited.

(Supreme Court, Appellate Division, Fourth Department. November 20, 1912.)

1. SALES (§ 180*)—ENTIRE CONTRACT—ACCEPTANCE OF PART PERFORMANCE—LIABILITY OF BUYER.

  Where a seller made a partial delivery under an entire contract, and the buyer accepted the same as part performance, but declined to accept it as full performance, and notified the seller that, if he persisted in refusing to deliver the balance, the damages would more than offset the goods delivered, the buyer was liable for the price of the goods delivered, subject to his claim for damages for nondelivery of the balance.

  [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 469–472; Dec. Dig. § 180.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. SALES (§ 180*)—CONTRACTS—PART PERFORMANCE—RIGHTS AND LIABILITIES
   OF BUYER.

  A buyer under an entire contract may not be compelled to pay for a
  delivery which is only a partial performance of the contract, where he
  chooses to assert his right to full performance before any obligation
  arises; but full performance may be waived, so as to render him liable
  for the partial performance, subject to the right to the damages sus-
  tained by failure of full performance.

  [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 469–472; Dec.
  Dig. § 180.*]

Appeal from Trial Term, Oneida County.

Action by John B. Hall against the New Hartford Canning Com-
pany, Limited. From a judgment for defendant, entered on the de-
cision and findings of the referee appointed to hear, try, and deter-
mine the issues, plaintiff appeals. Conditionally modified and af-
firmed.

Argued September term, 1912, before McLENNAN, P. J., and
KRUSE, ROBSON, and FOOTE, JJ.

Donald Bain, of Buffalo, for appellant.
H. J. Cookinham, of Utica, for respondent.

ROBSON, J. The claim, which is the cause of action alleged in
plaintiff's complaint, was assigned to him by the McMorran-Gray
Company, Limited, a copartnership duly formed and existing under
the laws of the state of Michigan. The business of the McMorran-
Gray Company was growing and furnishing seeds to canners and
seed houses. A written contract, dated December 21, 1907, was made
by them with defendant, by which they agreed to plant sufficient
seed ordinarily to produce certain designated varieties of peas in
the quantities thereinafter specified, and, "the season permitting the
growing of the same," to deliver the same to defendant free on board
at growing station on or before January 1, 1909, or as soon as ready.
The defendant on its part purchased the amounts and varieties of
peas specified in the contract at the prices fixed therein as follows:
1,000 bushels Admiral, at $2 per bushel; 500 bushels Alaska, at $2.25
per bushel; and 100 bushels Prince of Wales, at $2.30 per bushel.
This written contract contained a further agreement that the Mc-
Morran-Gray Company should plant a certain quantity of beans
to be furnished by defendant, and deliver the whole net product
thereof to defendant at prices specified therein. In about November,
1908, defendant, by a further contract with the McMorran-Gray Com-
pany, bought 150 bushels of Admiral and 80 bushels of Prince of
Wales peas at the agreed price of $1,137.

No controversy arises as to the delivery to and receipt by defend-
ant of the peas to fill this last contract, nor is it seriously questioned
that the beans were planted as provided in the contract, and the
whole net product thereof delivered to the defendant. We agree with
the conclusion of the referee that the contract for growing the beans
was a severable and distinct contract, not dependent upon the con-
tract for growing the peas, although the two contracts were included

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the same instrument. The principal question of fact litigated in the action was whether the McMorran-Gray Company had complied with its contract to grow and deliver peas as therein provided. The delivery in fact made to defendant was at the rate of 30 per cent. of Admiral and Alaska and 40 per cent. of Prince of Wales peas. That is, instead of delivering 1,000 bushels of Admiral peas, the delivery was 300 bushels; instead of 500 bushels of Alaska peas, 150 bushels were delivered; and instead of 100 bushels of Prince of Wales peas, 40 bushels were supplied. We are of the opinion that the finding of the referee that defendant was entitled to an additional delivery of peas of each variety grown by the McMorran-Gray Company under its contract with defendant was correct; this additional amount being 30 per cent. of the amounts retained by the McMorran-Gray Company from the crop of Admirals and Alaskas and 40 per cent. of the amount so kept out of the crop of Prince of Wales to replace the seed sown, and that no custom, binding upon defendant, permitting defendant to so retain from the crop an amount equal to the seed sown before making division of the crop among purchasers having like contracts, was proved. The additional delivery of peas to which defendant was entitled upon this basis was 323.-56 bushels of Admirals, 233.1 of Alaskas, and 30.8 of Prince of Wales. Defendant in its answer set up its damages caused by the failure of the McMorran-Gray Company to deliver peas as required by the contract as a counterclaim to plaintiff's cause of action, and the referee has allowed damages by reason thereof. Correcting a trifling, though apparent, error of the referee in computation of these damages, their amount appears to be $1,607.59.

[1] Though the referee allowed defendant's counterclaim for damages by reason of McMorran-Gray Company's failure to make the full delivery of peas to which defendant was entitled under the contract, he denied any allowance to plaintiff for the contract price of the partial delivery of these contract peas actually made to defendant by the McMorran-Gray Company. This we think was error. At the contract price the peas thus delivered amounted to the sum of $1,029.-50. No allowance was made to plaintiff for this delivery, because, as the referee held, there could be no recovery therefor until the whole quantity to which defendant was entitled had been delivered. He also refused to find that defendant had waived complete delivery. But, though it was not established that defendant waived a complete delivery, in the sense of accepting the partial delivery as a complete performance of the contract, yet it is apparent from defendant's letters to the McMorran-Gray Company, following its receipt of the peas delivered by the latter, that its purpose was to accept that delivery as a partial performance of the contract, and, in the event the McMorran-Gray Company failed to make a further and complete delivery, to assert its claim for damages by reason of such failure. After receiving the delivery of peas, made by the McMorran-Gray Company, and understanding that they claimed it to be a full delivery under the contract, defendant wrote them a letter from which the following excerpt is quoted:

"We positively decline to accept the delivery which you have made as in full for contract. If you see fit to bring action, we shall be more than glad to give the matter a full airing in court."

Some days later, replying to an intermediate letter of McMorran-Gray Company, defendant wrote:

"We see no reason for remitting you. If you persist in refusal to deliver balance of our contract, the matter of damage to us will more than offset the goods you have shipped. If you doubt our ability to prove this claim, by all means start your action; but we assure you that you will save money by fair dealing."

Clearly this correspondence, followed as it was by defendant's interposing as a counterclaim in this action its claim for damages by reason of failure to complete delivery under the contract, shows, as was said in Silberman v. Fretz, 16 Misc. Rep. 449, 452, 38 N. Y. Supp. 151, 153:

"That the defendant did not expect to avoid payment for the goods delivered, except by recouping his damages for nondelivery of the remainder."

[2] The contract being entire, defendant could not be compelled to pay for a delivery, which was only a partial performance of the contract, if it chose to assert its right to full performance before any obligation to pay arose.

"But full performance of a contract may be waived by the parties, so as to enable the one against the other to obtain relief for partial performance; and so may defective performance be accepted, subject to the right of the party damnified to recover or recoup damages for the loss he has sustained by reason of it. In such case the right of forfeiture is denied to the party, his right exists in the contract, and his remedy for relief rests in his assertion and proof of damages for the defective performance by the other party, whose right, subject to such claim, remains effectual." Parke et al. v. Franco-American Trading Co., 120 N. Y. 51, 56, 23 N. E. 996. Highlands Chemical & Mining Co. v. Matthews, 76 N. Y. 145; Avery et al. v. Willson, 81 N. Y. 341, 37 Am. Rep. 503; Leavenworth v. Packer, 52 Barb. 132, 137.

Defendant was, of course, entitled to full compensation for its loss by reason of the failure of McMorran-Gray Company to completely perform its contract. Receipt by defendant of the partial and incomplete delivery, together with the allowance to it of damages for failure to make complete delivery, is in effect the same as though complete performance had been tendered to and received by it. It would be manifestly unjust to permit it to retain without charge the peas delivered in partial performance of the contract, and in addition recover damages for failure to deliver the balance necessary to make that partial performance complete.

The appellant's rights were not prejudiced by the referee's decision of the other questions now urged as ground for reversal of the judgment. It therefore appears that the referee should have allowed plaintiff the sum of $1,029.50 for the delivery of peas in partial performance of the contract, in addition to the sum of $1,343.09 fixed by him as the amount plaintiff would have been entitled to recover, except for the allowance of defendant's counterclaim. Defendant's damages, fixed by the referee, corrected as above set forth, are $1,607.59. Plain-

tiff should therefore have had a judgment against defendant for $765 and costs.

It follows that the judgment should be reversed, and a new trial ordered, with costs to appellant to abide event, unless defendant stipulates that the judgment be modified, as of the date of entry thereof, so that plaintiff recover of defendant the sum of $765 damages, besides the costs of the action, in which event the judgment, as modified, is affirmed, without costs of this appeal.

Judgment reversed, and new trial granted, with costs to appellant to abide event, unless the defendant shall within 20 days stipulate that the judgment be modified as of the date of entry thereof, so as to provide that the plaintiff recover of the defendant the sum of $765, and the costs of the action, in which event the judgment is modified accordingly, and, as so modified, is affirmed, without costs of this appeal to either party. All concur.