ERIE BEACH AMUSEMENTS, LTD., Plaintiff, *v.* SPIRELLA COMPANY, INC., Defendant.

(County Court, Niagara County, November, 1918.)

Contracts — separability of — foreign corporations—interstate commerce — General Corporation Law, § 15 — Tax Law, § 181.

The separability of a contract having many elements of entirety depends upon the intention of the parties.

A Canadian corporation by a contract made in New York agreed to carry those participating in the annual outing of the defendant from Niagara Falls, N. Y., to Erie Beach, Canada, and return for a certain sum of money, and by a contract made in Canada it agreed to provide a luncheon. In a suit to recover upon both causes of action separately stated, performance by plaintiff of the first contract was admitted. The second cause of action was on *quantum meruit* for the agreed price of the luncheon.

*Held*, that defendant having accepted part performance and received a substantial benefit therefrom, with full knowledge that substantial performance could not be made, there arose an implied contract on its part to pay the reasonable value of the part performance.

A counterclaim interposed by defendant for non-performance allowed as against a claim that its guests who were its employees alone were injured.

The plaintiff had a legal right to enter the state of New York and maintain therein an office for the transaction of business in interstate commerce, and the fact that it never procured the certificate required by section 15 of the General Corporation Law and never paid any license tax as required by section 181 of the Tax Law, did not preclude a recovery upon the first cause of action.

ACTION on contract, jury waived, trial by court.

Ray M. Stanley, for plaintiff.

W. S. Smith, for defendant.

Fish, J.   The plaintiff, a corporation organized under the laws of Ontario, Canada, sues on two separate causes of action, one on a charter-party for the transportation on one of its steamers of the persons participating in the annual outing of defendant from Niagara Falls, N. Y., to Erie Beach, Canada, and return for the sum of $160; and the other on *quantum meruit* and for the agreed price of a luncheon served to 373 persons at Erie Beach, Canada, at sixty cents per person, performance by plaintiff and failure to pay by defendant being alleged as to each cause of action.

While the contracts have many elements of entirety, intention governs in such cases and I find that they are separate.   I find that the charter party, which was not a demise, as the plaintiff retained the possession, command and navigation of the steamer, but really a contract for the transportation of passengers, was made in New York; and that the contract for lunches was made in Ontario, Canada.   The performance by plaintiff of the charter-party is admitted, while its performance of the other contract is disputed and a counterclaim interposed for damages for non-performance.

The plaintiff agreed to serve all the party at one time on arrival at Erie Beach with a specified cold lunch including hot coffee and hot beans and to give them the use of its athletic field until three P. M. of the day in question to carry out an athletic programme, for sixty cents per person.   There were 373 persons in the party, but the plaintiff only prepared to serve 200 at one time; there was considerable delay in preparing to serve the rest and also in the serving of all, and proposed atheletic games could not be held on account thereof; also a large portion of the

coffee served was cold and a large portion of the beans insufficiently cooked.

I find that there was not a substantial performance of the contract; but the defendant accepted the part performance made with full knowledge at the time that substantial performance could not be made and received substantial benefit from such part performance. I think under the circumstances an implied contract arose to pay the reasonable value of the part performance (*Hall* v. *New Hartford Canning Co., Ltd.,* 153 App. Div. 562; *McDonough* v. *Evans Marble Co.,* 112 Fed. Repr. 637; Am. & Eng. Ency. of Law [2d ed.], 152, on subject contracts) which I find to be the sum of $186.50.

As to the counterclaim for damages for non-performance of the contract, it is claimed that defendant's guests alone were injured. I do not so view it. Its guests were its employees and there has been a constantly growing tendency in modern times for employers to look after and provide for the welfare, safety and occasional entertainment of their employees. This is done not as a matter of charity or as a pure gift but as a matter of sound business judgment to the end that there may be loyalty to the concern and satisfaction with the work, and the manufacturing establishment which fails to recognize this tendency is not in accord with the spirit of the times. It is difficult to measure in dollars and cents the damages arising from a breach of such a contract; but the requirements of the law decrease as the difficulties of the proof increase (*Drucker* v. *Manhattan R. Co.,* 106 N. Y. 157), and I find the defendant's damages to be the sum of sixty dollars.

The plaintiff therefore would be entitled to recover on the first contract the sum of $160 with interest thereon from August 25, 1917, and on the second

contract the sum of $126.50, unless it is excluded from suing in our courts.

The plaintiff at the time of the making of these contracts and for some time prior thereto had an office in the city of Buffalo, N. Y., furnished and with two stenographers, and the only evidence as to the business transacted thereat is the making of the first contract and two letters of plaintiff on its printed Buffalo letter-head, and I find that the business transacted at such office was in reference to the transportation of passengers between New York state and Erie Beach, Canada, and matters incidental thereto. The plaintiff never procured from the secretary of state the certificate of authority required by section 15 of the General Corporation Law and never paid any license tax as required by section 181 of the Tax Law.

The Constitution of the United States (Art. 1, § 8, subd. 3) provides that the congress shall have power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;" and while under its general police power a state may, acting in good faith, enact laws in the interest of public health, safety and welfare, only remotely, incidentally and indirectly affecting such commerce, which will be valid in the absence of congressional action, no state can validly enact a law which burdens such commerce because it is a matter within the regulatory power of congress and a failure of congress to act on the subject in any respect is equivalent to a declaration on its part that such commerce shall be absolutely free in that respect. Brennan v. Titusville, 153 U. S. 289; Western Union Tel. Co. v. Kansas, 216 id. 1; Crutcher v. Kentucky, 141 id. 47. The said sections of the General Corporation Law and Tax Law do not apply to the activities of interstate or foreign

commerce (*International Text Book Co.* v. *Tone*, 220 N. Y. 316) because if they did they would burden interstate commerce and be void *(International Text Book Co.* v. *Pigg*, 217 U. S. 91; *McCall* v. *California*, 136 id. 104; *Brown* v. *Merriman*, 25 id. 12; *Robbins* v. *Shelby Taxing District*, 120 id. 489; *Crenshaw* v. *Arkansas*, 227 id. 389; *Caldwell* v. *North Carolina*, 187 id. 622; *Rearick* v. *Pennsylvania*, 203 id. 507; *Sioux Remedy Co.* v. *Cope*, 235 id. 197), and consequently our courts construe each of such sections as not applicable to interstate or foreign commerce; but it is claimed that the business conducted in the instant case was domestic and local and not foreign because the contract was actually made in New York, while in the *Tone* case the business transacted was the taking of orders which did not ripen into contracts until accepted in the home state of the corporation. Such was the situation in the *Tone* case and likewise in many cases in the United States Supreme Court, but here the contract was not for the sale of goods which might have to be brought into New York as an incident of its performance, nor even a contract, the performance of which required that something be brought into this state from another state or a foreign country. The contract here relates solely to transportation of passengers in foreign commerce and is analogous to the contracts made in Kentucky for the transportation of goods by an express company from that state to other states and which was held to be interstate commerce in *Crutcher* v. *Kentucky*, 141 U. S. 47. The plaintiff had a perfect legal right to enter the state of New York and do business in foreign commerce and to maintain an office for the transaction of such business; it is here on such a mission and the Constitution of the United States protects it in the exercise of such right. The courts of this state will not strain towards the exclu-

sion of foreign corporations from its courts when such exclusion will precipitate embarrassing constitutional questions.    *Hovey* v. *DeLong Hook & Eye Co.*, 211 N. Y. 429.

Judgment for plaintiff.