THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH CHAPLEAU, Appellant.

Both before and since the passage of the Code of Criminal Procedure the test of admissibility of the statements of a party accused of the commission of a crime, whether made in the course of judicial proceedings or not, is whether they were voluntarily made, and that is to be deter-

mined by their nature and the circumstances under which they were: made.

It is no ground for the exclusion of admissions by a prisoner charged with a crime that they were made while he was under arrest, if shown to have been made voluntarily and without influences of promises or threats.

Upon the trial of an indictment for murder it appeared that at the coroner's inquest, held the day after the homicide, the foreman of the coroner's jury, who was also sheriff, stated that the prisoner wanted to come before the jury and make a statement.  He was brought in, and, after having been informed by the coroner as to his right to depose or not, as he thought fit, and that the deposition might be used against him thereafter, elected to be sworn and asked to be allowed to testify.  He was then sworn and made a statement of the circumstances of the homicide.  The next day the accused denied having made this statement, and refused to sign it.  The statement was received in evidence.  *Held,* no error. (Code-Crim. Pro. 395.)

*People* v. *McMahon* (15 N. Y. 384); *People* v. *Mondon* (103 id. 211), distinguished.

Evidence of statements made by defendant to the officer shortly after his arrest was received under objection and exception.  *Held,* no error.

Two of the witnesses for the prosecution, who testified to facts, of which, upon the preliminary examination, they had denied knowledge or had suppressed information, stated that in so doing they were moved and deterred by motives of fright.  They appeared free from improper instigations or motives to swear falsely.  *Held,* that a refusal of the court to instruct the jury to disregard their testimony was not error; that their credibility was a question for the jury.

*It seems,* since the passage of the Code of Civil Procedure (§ 832) and the Penal Code (§ 714) all questions as to the credibility of a witness are for the jury.

(Argued April 17, 1890 ; decided April 29, 1890.)

Appeal from judgment of the Court of Oyer and Terminer of Clinton county, rendered January 29, 1890, entered upon a verdict convicting defendant of the crime of murder in the. first degree.

The material facts are stated in the opinion.

*James Averill* for appellant.  The court erred in allowing James Boyle to testify as to what Chapleau said while in custody of· constable Randall charged with murder, as the statement was not voluntary.  (*People* v. *McMahon,* 15 N. Y. 384.)  It was error to allow Chapleau's statement before the

coroner in evidence against himself, he then being confined in jail upon the charge of murder. This was not a voluntary statement. (*People* v. *McMahon*, 15 N. Y. 384.) It was error to allow the jury to consider the testimony of Nelson Brown and Peter Brown, they having committed perjury by their own confession. (*Dunlap* v. *Meigs*, 5 Cow. 243.)

*Samuel L. Wheeler* for respondent. The finding of the jury that the defendant was guilty of murder in the first degree is abundantly supported by the evidence. (*People* v. *Kelly*, 113 N. Y. 647; *People* v. *Cignarale*, 110 id. 23.) " All confessions material to the issue, voluntarily made by a party, whether oral or written, and however authenticated, are admissible as evidence against him on trial for a criminal offense." (Code Crim. Pro. § 200, subd. 3.) The mere fact that the defendant did not sign his evidence, given voluntarily after he had been cautioned as required by the Code, does not render the evidence incompetent. (*People* v. *McGloin*, 91 N. Y. 239, 247; *People* v. *Murphy*, 63 id. 590; *People* v. *Johnson*, 1 Wheeler's Cr. Cas. 193; *People* v. *Mondon*, 103 N. Y. 211, 219; Code Crim. Pro. §§ 393, 395; *People* v. *Teachon*, 41 N. Y. 7; *People* v. *Druse*, 103 id. 655, 656.)

Gray, J. The defendant was indicted for the crime of murder in the first degree, for the killing of Irwin E. Tabor, and he was tried at a Court of Oyer and Terminer, held in and for Clinton county. The jury rendered a verdict in accordance with the charge in the indictment and sentence of death was passed. From the judgment of conviction the defendant has appealed to this court; and his counsel assigns as grounds for sustaining his appeal, the admission of improper and incompetent evidence and the insufficiency of the evidence to convict for murder in the first degree. We have carefully read and considered the proofs in this record, relied on to establish the defendant's guilt. We are satisfied that no injustice has been committed against him in the trial upon the

indictment, and that the verdict could not have been other-
wise rendered by sensible men.   The occurrence of the killing
was in this wise, as it is made to appear from the whole record :

The defendant lived near the village of Plattsburgh and was
employed in the hauling of wood.   About four o'clock on
Monday afternoon, January 28, 1889, he and two other team-
sters were returning home with their sleds, when, at a point in
the road, they met the deceased driving himself in a sleigh.
He turned out, with a nod of recognition, and passed the three
teams, of which the defendant's led.   After passing, defend-
ant attacked the deceased, struck him upon the head with a
wooden stake and knocked him out of his sleigh upon the
road, where he shortly after expired from his injuries.   This
attack was testified to by one of the teamsters, Nelson Brown ;
the other one having died since the occurrence.   Brown's
attention was attracted by hearing the defendant address the
deceased with loud and violent language.   He looked behind
and saw the deceased stricken down from his seat and fall
upon the road.   Of other witnesses, evidence was had of his
loud and abusive exclamations ; of his hastening from the rear
of the teams, where the body lay, with a stake in his hand, to
catch up with his team, which had gone on ahead ; and of the
finding of the body upon the road, with the head battered
almost beyond recognition, with the blanket and buffalo-robe
still wrapped about his person and with a piece of the driving
reins tightly grasped in his mittened hands.   Evidence was
also adduced of the defendant's saying to the officer, who had
arrested him the same evening and was conducting him to
Plattsburgh : " I do not think that Mr. Tabor will poison any
more cows."   This remark had reference to the prisoner's pre-
vious statements, testified to by witnesses, that the deceased
had poisoned his cow.   The utterance of threats by the
defendant against the life of the deceased was also proved.
One neighbor testified that the defendant had threatened to
shoot Tabor, remarking that he had injured his cow.   Another
testified that the night before, when the defendant was at his
house, he had narrated a conversation had with Tabor on the

road. He told witness that he had called Tabor "cow doctor, Vermonter," and Tabor had told him to "shut up his head," and he had answered back, "I will not shut up my head, but I am going to shut up your head for you, and when I shut it up it will stay shut." When the wife of the witness, hearing this, said: "If you was to do that to Mr. Tabor you would be apt to get a rope around your neck;" he replied, "Mrs. Brown, people will be so glad to get that long body destroyed, people will not hurt me much; any way, they do not hang any more; if I was going to be killed, I would be killed that new way."

The next day after the occurrence, when the coroner held his inquest, the foreman of his jury, who was also the sheriff, stated that Chapleau, the prisoner, wanted to come before the jury and make a statement. He was brought in, and what he then said was reduced to writing by the coroner. That official, being examined as a witness upon the trial, gave in evidence the statements of the defendant as taken down by him at the time of the inquest. He testified, from his minutes, that he informed the prisoner before the jury as to his right to depose, or not, as he thought fit, and that the deposition might be used against him thereafter; that the prisoner elected of his own free will to be sworn, and asked to be allowed to testify. The prisoner's story was then given, as thus stated; in which he represented the occurrence as provoked by deceased. He stated that the deceased referred to his remarks about poisoning cows, and jumped from his cutter upon the sled with something in his hand, whereupon he, the prisoner, hit him with the stake. He also stated that the deceased had threatened to shoot him, and that they had had disputes concerning this alleged poisoning of his cows by the deceased. As against the people's evidence the prisoner adduced some evidence of his good character. The charge of the trial judge was very fair and was not excepted to; nor was it really exceptionable in its instructions to the jury.

But the appellant's counsel relies and insists upon certain features of the case, as it was developed upon the trial, as exhibiting a lack of credible evidence upon which to convict;

the incompetency of the coroner's evidence of the statements of the accused, and the inadmissibility of the evidence of what the prisoner had said while under arrest immediately after the occurrence. These points we will consider.

Three elements enter into the proof convicting the defendant of the crime charged in the indictment. They are the testimony of an eye-witness of the occurrence, the admissions and statements of the prisoner, and corroborating circumstances, in the evidence of previous threats by the prisoner and of what transpired about the time of the killing, according to the evidence of persons who, while not seeing the actual killing, saw the prisoner and the deceased on the road. They had observed his actions, and saw the condition in which the body of the deceased was found. Before considering the points of the appellant's counsel, we may here say that the prisoner's statements of what occurred between him and the deceased are absolutely negatived by the facts. The position in which the body of the deceased was found made it impossible that he should have jumped from his cutter upon the defendant's sled to attack him, or that any attack could have been made by the deceased. The body was found upon the road with the hands clenched in front and still holding the broken rein. The blanket was around his legs, and the buffalo-robe partly around him and up under his right arm. Such circumstantial evidence made it clear that the deceased was stricken down while on his seat in the sleigh and engaged in driving his horses. The accused, after making this deposition before the coroner and jury, refused upon the subsequent day to sign it, and denied making it. This subsequent action of the accused may have been predicated upon one of two mental conditions, either that he was unwilling to sign a false statement, or else that subsequent reflection made him regret having made any statement at all.

But the defendant's counsel argues that the statement before the coroner was inadmissible in evidence upon the trial, and he places the objection on the ground that the prisoner was then confined in jail upon the charge of murder, and that it

was not a voluntary statement. These were not the grounds of the objection taken at the trial. At that time they were that the statements were not signed by the party. But, over-looking the absence of other objections, we will consider if any injustice was done, or any legal error committed in the reception of the coroner's evidence.

The object of the law has always been the accomplishment of justice by eliciting the truth about an occurrence, in such a mode as to minimize the chances of error and mistake, and to charge the accused with guilt by the most direct proofs; and the aim of the statutes of criminal procedure is to secure the punishment of a person, indicted for a crime, only by methods consistent with the maintenance of every safeguard against error and self-crimination. The design of the state is always to preserve intact for the benefit of the accused the presumption of his innocence, in the proceedings for his conviction, and courts should endeavor to scrupulously guard his position in that respect, and rather to err on the side of a tender regard for his rights; for the penalty is death. Section 196 of the Code of Criminal Procedure provides that where a party is examined before a magistrate he shall be informed as to his rights and privileges with respect to making any statements. Section 200 provides that the statement must be reduced to writing and, if defendant refuses to sign it, his reason therefor must be stated, and it must be signed and certified by the magistrate. These conditions were met in the present case. Section 395 has provided that the confession of a defendant, whether in the course of judicial proceedings, or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or upon a stipulation of the district attorney that he shall not be prose-cuted therefor.

The question then is, was the statement of the prisoner made before the coroner and jury admissible to prove the homicide? Clearly it was, under the provisions of section 395. It was made at his own election and request, and without the operation of the influences of fear, produced by threats, or of

hope, under a stipulation that he would not be prosecuted. It was admissible even before the enactment of the Code provision, for it was voluntary, because made at the prisoner's own suggestion.

The case of *People* v. *McMahon* (15 N. Y. 384), cited by the counsel for the appellant, is not against the principle of its admissibility. In that case the prisoner was arrested as the probable murderer, taken before the coroner, then holding an inquest over the body of the deceased, and was sworn and examined as a witness. Upon the trial the evidence so taken was read against him. This was held to be an error; but the ground taken by the court was that the testimony taken before the coroner was in its nature unreliable evidence, and that the reason of the rule of law, which demanded its exclusion, was in that consideration. It could not be said that the statements proceeded from the internal and spontaneous impulses of the prisoner alone, or were uninfluenced by any extraneous cause of sufficient force to prevent free and voluntary mental action, and that a judicial oath, administered when the mind was agitated by a criminal charge, might have that effect. Judge Selden delivered the opinion in that case and he discussed the meaning of the term voluntary, in reference to confessions. He thought there was an obvious principle underlying the rule which excluded the statements of a prisoner, when not made free from outside influences of a nature disturbing to the mind. He stated it to be that, " We cannot safely judge of the relations between the motives and the declarations of the accused, when to the natural agitation consequent upon being charged with crime, is superadded the disturbance produced by hopes and fears artificially excited." And he defined a voluntary confession as one "proceeding from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause." In the case of *Teachout* v. *People* (41 N. Y. 7), the statements of the prisoner before the coroner, being voluntarily made and after he had been informed that he was under no obligation to testify, were held properly admitted upon the

trial. *People* v. *Mondon* (103 N. Y. 211) was a recent case, decided since the passage of the Code. There the examination before the coroner was excluded; not because of any principle of inadmissibility inherent in the evidence generally, but, because it had not and could not have been, in the nature of things, a voluntary confession. There the prisoner upon being arrested was brought before the coroner as a witness and examined. He was an ignorant man; was unattended by counsel and was not informed of his rights or privileges as to testifying. Judge RAPALLO reviewed this question of the admissibility of the examination of persons under oath before a magistrate, or coroner. He held that they must be excluded upon the subsequent trial for the offense, under circumstances, where the prisoner, having been arrested as a suspected murderer, was taken before the coroner's inquest or examining magistrate, and there examined on oath as to circumstances tending to connect him with the crime. His opinion was given with reference to the facts of the case before him, which showed that there was no confession; but an examination before a magistrate. He expressly held that section 395 of the Code was intended to apply only to voluntary confessions, and not to change the statutory rules relating to the examination of prisoners charged with crime.

It is thus perfectly clear that, both before and since the enactment of the Code provisions, the test of admissibility of the statements of a party accused of the commission of the crime, whether made in the course of judicial proceedings or not, is whether they were voluntary, and that can be determined by their nature and the circumstances under which made. If, in all respects, and however viewed, they could only have been the voluntary and uninfluenced statements of the individual, no principle of law warrants their exclusion and the Code expressly authorizes their being given in evidence upon the trial.

The appellant's counsel argues that it was error to admit the testimony of a witness as to what the defendant said to the

officer shortly after the arrest. No objection was taken at the trial, and, as the defendant's statements were voluntary ones, no objection would be tenable.

It is no ground for the exclusion of admissions that they were made while the party was under arrest, if shown to have been made voluntarily and free from influences of promises or threats. (*Balbo* v. *People*, 80 N. Y. 484.)

Another ground of error presented is that the jury should not have been allowed to consider the testimony of Nelson and Peter Brown. The appellant's counsel argues that they were perjured witnesses on their own showing. If this were true, it would be no reason for any such instruction by the court to the jury. But it is not a correct conclusion from the facts respecting these witnesses. They were evidently men of low intellectual order and dull of comprehension, and frightened at being drawn into the case. Nelson Brown was the eye-witness of the occurrence, and Peter Brown was the person, at whose house, the evening before, the defendant had repeated his threats made to the deceased. Nelson Brown at first denied knowledge of the facts, to which he, on a subsequent day of the holding of the inquest, did testify. Peter Brown did not state, upon his examination before the coroner, the facts of the conversation. It does not appear that they had any motives for this conduct, or were influenced otherwise than by fright, or some kindred emotion. That was most probably the truth of the matter as to both, and, possibly, in the case of Nelson Brown, there may have been superadded the motive to shield a friend. At any rate, upon the trial, they avowed their fright as the cause and explanation. They were not otherwise impeached as witnesses, and the judge commented in his charge upon the testimony of these witnesses and said it was open to the criticism of counsel for the defendant, and he instructed the jury that they must be satisfied of its truthfulness. We think that it was for the jury to pass upon the question of the credibility of these witnesses. It was formerly held to be the rule that where a witness was shown to have wilfully sworn falsely in a former proceeding

in the case, or upon the trial, or, as in the case of *People* v. *Evans* (40 N. Y. 1), where the false swearing was instigated by the prisoner, and the witness had been promised a reward for so swearing, that the jury should be instructed to disregard the testimony of such witness. *Dunlop* v. *Patterson* (5 Cow. 243) is an early and leading case on that subject. The doctrine as to the treatment of testimony which is affected by contradictions and inconsistencies, or by evidence making its falsity manifest and establishing a consciousness in the witness of its falsity, has been much considered in the books. Opinions have not always been in accord, but the weight of authority was in favor of the general rule that the question of the credibility of a witness was one for the jury, and that the only exception to the rule was in cases where the discrepancies in the testimony were the result of deliberate falsehood. (*The Santissima Trinidad*, 7 Wheat. 339; *Conrad* v. *Williams*, 6 Hill, 444, 446; *People* v. *Evans, supra*; *Wilkins* v. *Earle*, 44 N. Y. 172; *Pease* v. *Smith*, 61 id. 477; *Place* v. *Minster*, 65 id. 89; *People* v. *Petmecky*, 99 id. 415.)

But, since the enactment of section 714 of the Penal Code and section 832 of the Code of Civil Procedure, we must hold that a new rule obtains, and that the rule and policy of the law are to allow all testimony to go to and be weighed by the jury. By those sections, a person convicted of any crime is, notwithstanding, a competent witness in any cause or proceeding, civil or criminal; but proof of his conviction is allowed for the purpose of affecting the weight of his testimony. In *People* v. *O'Neil* (109 N. Y. 251, 266), the court had refused to charge that if the jury should find that certain witnesses had in their previous testimony, in respect to the same matters, committed wilful perjury, the jury should wholly disregard their testimony given on the trial. This was held not to be error, and Andrews, J., said, in reference to the force of section 714 of the Penal Code: "It would be manifestly absurd, in the sight of this statute, now to hold that an unconvicted perjurer was an incompetent witness, whose evidence could not be considered by the jury, when, under the statute, if he

had been convicted, his evidence must be received and weighed by the jury." Here the witnesses in testifying to facts, of which upon the preliminary examination they had denied knowledge, or which they had suppressed, may have been moved and deterred, as they swore they were, by motives of fright; and they appear to have been perfectly free from improper instigations, or motives to swear falsely. At any rate, it was for the jury to decide whether they were to be believed or not.

There was other evidence of a circumstantial nature, clearly pointing to the defendant as the perpetrator of the crime, and which the jury could consider in connection with the evidence assailed.

The judgment of conviction should be affirmed.

All concur.

Judgment affirmed. _____