URANSKY v. DRY-DOCK, E. B. & B. R. Co.

*(Supreme Court, General Term, First Department. March 13, 1891.)*

1. OPINION EVIDENCE.

In the examination of physicians as expert witnesses, it is error to allow questions which require the witnesses to determine in their own minds what the evidence was which had been given, and to form and express their judgment upon their own conclusions as to the nature and effect of that evidence.

2. CREDIBILITY OF WITNESSES.

In an action for damages for personal injuries alleged to have been sustained by plaintiff from the negligence of defendant's employes, the court charged the jury, at the request of defendant, that they were not bound to give to the evidence of plaintiff the same credence they would give to a disinterested witness; and at plaintiff's request, that defendant's employes were not disinterested witnesses, and their evidence should be subjected to as severe criticism as plaintiff's. *Held* that, while the first of these instructions was appropriate to the case, the second was error for which a judgment for plaintiff should be reversed.

Appeal from circuit court, New York county.

Action by Sarah Uransky against the Dry-Dock, East Broadway & Battery Railroad Company. Defendant appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*John M. Scribner*, for appellant. *Louis Z. Kinstler*, *(James S. Lehmaier*, of counsel,) for respondent.

DANIELS, J. The plaintiff was injured while riding as a passenger in one of the cars of the defendant, by a collision between the car and another vehicle upon the street, on or about the 22d of April, 1885. The injury received by her was charged to have been permanent, and to have resulted in a miscarriage of a child of which she was at the time pregnant. Her evidence tended directly to prove that the collision with the other vehicle in the street resulted from carelessness or improper management on the part of the driver of the car. It also tended to establish the fact that these other allegations contained in the complaint were truthful. But in the examination of physicians who were called upon to testify as witnesses in her behalf, questions were allowed to be answered, under the exceptions taken by the defendant, which are now insisted upon as erroneous. By one of these questions the witness Nordeman, who was a practicing physician, was asked: "Assume that Mrs. Uransky was in good health upon the afternoon of April 22, 1885, and became a passenger upon a street-car, which car came into collision with a truck; that the collision was so great as to result in her striking her head against a pane of glass; that the pane of glass was broken, and her head was cut; that she then went home and went to bed, and two days afterwards had a miscarriage, having begun to bleed at her womb some hours after she returned home, and the bleeding having kept up until the miscarriage took place,—would you, as an expert, say that the miscarriage was the result of that collision?" This was objected to as incompetent, and the objection was sustained by the court on the ground that there was no such testimony in the case as was included in the question. After that ruling was made, this further question was propounded to the same witness: "*Question.* Having heard the statement made by counsel, and you having seen this woman on that evening, with the injury such as she had, would such injury as she was then suffering, in your opinion, be sufficient to cause a miscarriage on the following Saturday?" This was also objected to as incompetent, but the objection was overruled, and the witness answered, "Yes, sir." Another physician, examined as a witness upon the trial, was asked these questions: "*Question.* You have heard the statement contained in that question? *Answer.* I have heard the counsel make the statement now. *Q.* You have heard the statement of what were the injuries that this woman claims to have suffered on that day? *A.* I have heard

counsel's statement." And, after answering them, the further inquiry was made to him: "*Q.* Would that, in your opinion, as an expert, have been sufficient to have caused a miscarriage at the time stated, namely, on the Saturday following the accident?" This was objected to by the defendant's counsel as incompetent, and the witness answered: "Yes; I should consider that a sufficient cause." He was also asked: "*Q.* Did you hear the testimony in regard to the miscarriage given by the plaintiff? *A.* Yes, sir; I heard a part of the plaintiff's testimony. *Q.* That portion of it in which she spoke of the the miscarriage? *A.* Yes, sir,"—and then directed to answer a previous question inquiring concerning the probability of the miscarriage being caused by what had occurred; and that was objected to by the defendant's counsel as incompetent; but the objection was overruled, and the counsel excepted to the decision so made, and the witness answered, "Yes." These rulings were clearly erroneous, for they required the witnesses to determine in their own minds what the evidence was which had been given, and then to form and express their judgment upon their own conclusions as to the nature and effect of that evidence. The jury, in this form of inquiry, would be utterly unable to apply the answers obtained from the witnesses to the case they had to consider and decide; for they had no means of knowing what views were entertained by the witnesses as to what the evidence was which had been previously given, and upon which their answers were obtained. In the cases of *Gregory* v. *Railroad Co.,* 8 N. Y. Supp. 525, and *People* v. *McElvaine,* 121 N. Y. 250, 24 N. E. Rep. 465, this mode of eliciting evidence has been condemned as entirely improper. And there is no reason disclosed from the case for doubting the fact that the jury must have acted in rendering their verdict upon the evidence in this manner obtained.

The court charged, at the request of the defendant, that the jury were not bound to give to the evidence of the plaintiff the same credence which they would or ought to give to a disinterested witness, as she was to receive the fruits of the litigation, if the case proved successful. Upon the plaintiff's request, the further charge was given to the jury that the defendant's employes were not disinterested witnesses, and their evidence should be subjected to as severe criticism as the plaintiff's; and to that an exception was taken on the part of the defendant. While the first of these directions was appropriate to the case, the second as clearly was not so; for the jury were not bound to subject the testimony of the defendant's employes to the same severe criticism as they were the evidence of the plaintiff, but it was for them to determine, in considering all the probabilities of the case, how much credit these witnesses were entitled to receive in their statements at the hands of the jury. This exception accordingly appears to have been well taken. Neither of these objections were before the court upon the first appeal, the decision of which is reported in 44 Hun, 119, and 118 N. Y. 304, 23 N. E. Rep. 451, but they are presented for the first time upon this appeal. They were erroneously made, and went to the foundation of the plaintiff's right to maintain the action and recover damages. And, without considering other objections of a somewhat similar character, the result seems to be unavoidable that this judgment and order should be reversed, and a new trial directed, with costs to the defendant to abide the event.