(9 Misc. Rep. 107.)

### BRADY et al. v. CASSIDY et al.

(Common Pleas of New York City and County, General Term. June 4, 1894.)

1. TRIAL—INSTRUCTIONS—ACCURACY AS A WHOLE.
    Where the charge of the court as a whole correctly instructs the jury on the questions of law involved, particular words and expressions, which, if taken alone, would be erroneous, will be disregarded.

2. ELECTION OF REMEDIES—EFFECT.
    Where a seller removed part of the goods covered by the bill of sale, and claimed the right to remove others, the purchaser's remedies to refuse payment until the goods taken away should be returned, or to offset the value of the goods removed against the purchase price, are inconsistent, and a choice of one precludes the other.

3. SALE—FAILURE TO DELIVER GOODS—SPECIAL DAMAGES.
    Where a seller fails to deliver the goods sold, and they cannot be re-placed, and the buyer suffers loss thereby, it is a special damage, which must be pleaded.

4. WITNESS—CREDIBILITY—FAILURE OF PARTY TO TESTIFY.
    A request to charge that the failure of plaintiffs to testify on a former trial of the action as to certain facts was a suspicious circumstance, which the jury should consider in weighing their credibility, is properly refused, as the jury are the sole judges of the credibility of the witnesses.

Appeal from trial term.

Action by Harriet A. Brady, as executrix, and James Winterbottom, executor, of Alfred Brady, deceased, against Patrick Cassidy and I. Richard Adler. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Otto Horwitz, for appellants.
Henry A. Forster, for respondents.

BOOKSTAVER, J. The first trial of this action resulted in a verdict in favor of the plaintiffs, and the judgment entered thereon was affirmed by the general term of this court, but reversed in the court of appeals. Brady v. Cassidy, 104 N. Y. 147, 10 N. E. 131. On such reversal the court of appeals held that, on the facts then presented, the contract, the basis of this action, was plain and unambiguous in its language, and was susceptible of but one construction; that it stated the subject of the sale was the entire manufactured stock in good condition, consisting of pipes, fittings, and zincs, etc., "now on hand at foundry and store rooms on Fifty-Fifth and Fifty-Sixth streets, Tenth and Eleventh avenues." It further held that no technical words were used in the description, and no difficulty existed in applying the language used to the subject of the contract with certainty and exactitude; and that, therefore, it was. neither necessary nor proper to refer its meaning to the jury; and.

that the evidence as to the surrounding circumstances established no case showing that any uncertainty existed as to the identity of the property intended to be sold, or as to the meaning and intent of the contract. The opinion of the court also stated that:

"Whatever notion might have been entertained as to the understanding of the plaintiffs in respect thereto, there was not the slightest evidence to show that the defendants had any reason to suppose that the contract had any other meaning than that expressed by the literal signification of its language. It is not enough to render parol evidence competent that there are circumstances known to one of the parties, but unknown to the other, which might have influenced such party in making the contract; but to create an ambiguity that opens such a contract to parol explanation it must be established by proof of circumstances known to all of the parties to the agreement, and available to all in selecting the language employed to express their meaning."

We think the part of the opinion quoted necessarily indicates that it was proper to admit proof of circumstances known to all the parties to the agreement which were available to all in selecting the language employed to express the meaning of both parties; hence, that the learned judge who tried this case did not err in admitting under defendants' objections the conversations and negotiations which took place between the parties prior to the making of the contract or bill of sale and at the time the same was made, and that this evidence tended directly to establish on this trial what had not been established on the former. But even if this were not so, and it were error to admit evidence of such conversations and negotiations, we think it manifest the defendants were not injured thereby, for the court in a very elaborate and careful charge, which on this point was not excepted to by the learned and careful counsel for the defendants, submitted to the jury the following question: "Did the plaintiffs deliver to the defendants all the articles of merchandise which the plaintiffs contracted to sell and deliver?" to which the jury replied in the negative, thus finding in favor of the defendants upon that point. But defendants now contend that this question left it to the jury to determine what was and what was not included in the contract, and thus to construe that contract; and in support of this urge the refusal of the court to charge at their request "that the plain meaning of the contract of sale is that all of the goods in the premises of the plaintiffs on the 20th day of June, 1883, were sold to the defendants;" and also "the words 'goods on hand' mean goods physically in the premises at the time of the use of such words." If these requests and refusals stood alone, they would certainly raise a very serious question as to whether or not this judgment could be affirmed. But they do not, for at defendants' request the court charged "that, if the jury determined that the defendants were led to believe by the plaintiffs that the entire stock at the foundry on June 20, 1883, was included in the contract of sale, the defendants are entitled to recover their damages for the undelivered portion of said stock, whether the same had previously been sold by the plaintiffs or not;" and also "that the evidence in this case does not show any change of title from the plaintiffs of the undelivered stock prior to June 20, 1883;" and also "that, if the undelivered stock was ordered by various parties prior

to June 20, 1883, and nothing further was done in connection with such orders, except to enter them in the order book up to June 20, 1883, that would not constitute a sale of such undelivered stock, and plaintiffs were bound, under the contract of sale, to deliver said stock to the defendants, unless by express agreement with defendants all of said undelivered stock was excepted from the sale;" and also "that the defendants were entitled, under the contract of sale, to a delivery to them of all the manufactured stocks on hand at the foundry on June 20, 1883, irrespective of any sale of any part of said stock to any one else prior to June 20, 1883, unless the defendants assented to such sale;" and also "that the defendants were entitled, under the contract of sale, to a delivery to them of all the manufactured stock on hand at that foundry on June 20, 1883, if the jury believe that the same—that is, all—was pointed out to them as the stock intended to be sold to them;" and also "that the evidence does not show any change of title of the pipe from the plaintiffs to Mr. Newcombe prior to June 20, 1883, and that the pipe which Mr. Newcombe told Mr. Finch he, said Newcombe, would take, did not thereby at once become the property of said Newcombe;" and also "that the mere fact that Newcombe told Finch that he, said Newcombe, would take all the pipe there was, or words to that effect, did not constitute a transfer of the title of that pipe from the plaintiffs to said Newcombe, and did not excuse said plaintiffs from delivering said pipe to the defendants;" and, finally, that it was undisputed "that the evidence shows that the pipe which Newcombe told Finch he, said Newcombe, would take, were not included in the inventory, and were not delivered to the defendants,"—which we think were as clear and explicit instructions as to the contract and its interpretation as the defendants could have demanded under the facts proven in the case.

All that is required of a court is that its charge as a whole correctly instructs the jury on the questions of law which are involved. When this has been done, the court is not bound to adopt the exact language of counsel, or to charge further requests, however correct they may be. Mining Co. v. Cheesman, 116 U. S. 530, 532, 6 Sup. Ct. 481; Northwestern Life Ins. Co. v. Muskegon Bank, 122 U. S. 502, 510, 7 Sup. Ct. 1221; Railroad Co. v. Horst, 93 U. S. 291, 295; Laber v. Cooper, 7 Wall. 566, 571; Rexter v. Starin, 73 N. Y. 601; People v. Wayman, 128 N. Y. 585, 587, 27 N. E. 1070. And particular words and expressions in the charge, which, if taken alone, would be erroneous, will be disregarded. Chellis v. Chapman, 125 N. Y. 215, 223, 224, 26 N. E. 308; Hickenbottom v. Railroad Co., 122 N. Y. 91, 98–100, 25 N. E. 279; Losee v. Buchanan, 51 N. Y. 491, 492; Caldwell v. Steamboat Co., 47 N. Y. 282, 286, 287; Sperry v. Miller, 16 N. Y. 413. Moreover, the plaintiffs on this trial at no time claimed that the contract had been strictly performed, but it was tried by them on the theory that the defendants had waived the strict performance of the contract. On the former trial they claimed that the goods removed after June 20th had been sold to third persons before June 20th, and, as the plaintiffs did not own them when the contract of sale was signed, they were exempted from its terms, which conten-

tion was expressly condemned by the court of appeals. On the present trial the jury was charged that none of the undelivered goods had been sold before June 20th, and, in substance, that the defendants were entitled to a delivery of all the goods on the premises on June 20th, even though the plaintiffs did not then own them, unless the defendants had acquiesced and assented to their removal. On the former trial it was not proved that the defendants had any reason to suppose that any portion of the stock on hand had been agreed to be sold to other parties. On the present trial it appeared that the stock agreed to be sold to third persons had been separately piled, marked with the names of the respective purchasers, and pointed out to the defendants, who were informed that plaintiffs had agreed to sell it.

Appellants also contend that the court should have dismissed the complaint on defendants' motion at the close of plaintiffs' case, and also when all the evidence was in, on the following grounds: (1) That the plaintiffs had not established a cause of action; (2) that they had failed affirmatively to establish a fulfillment of the contract on which the action was based; (3) that the evidence produced upon the part of the plaintiffs showed that the contract had not been fulfilled; and (4) that the plaintiffs, having offered no proof as to the reasonable value of the property delivered, could not recover upon a quantum meruit. But we think when plaintiffs rested they had given testimony which, if credited by the jury, warranted the court in not dismissing the complaint. At that time it appeared that the defendants knew plaintiffs intended to sell some of the goods covered by the bill of sale to third persons, had told the plaintiffs to take them away, had taken some away in their own carts, and were paid for doing so by the plaintiffs, and had permitted others to be removed after they had taken possession of the factory and were operating it; and, notwithstanding these facts, had appropriated the goods they received to their own use, and subsequently claimed, not that they were discharged from liability to pay any part of the contract price, but that they were entitled to damages for the nondelivery of the goods they did not receive, and thus we think they had waived their right to require a complete delivery, and became liable to pay the contract price of the goods delivered, less the damages resulting from the nondelivery of the remainder. Avery v. Wilson, 81 N. Y. 341; Vanderbilt v. Iron Works, 25 Wend. 665; Krom v. Levy, 3 Thomp. & C. 705. In the first of these cases the court said:

"The question presented is whether the defendants are liable to pay for the boxes of glass actually received and retained by them without the delivery of the remainder. * * * [Page 345.] The defendants were not bound to accept a delivery of a portion of the boxes of glass, and had a right to reject or retain the same, as they saw fit; yet, if they elected to receive the part delivered, appropriated the same to their own use, and by their acts evinced that they waived this condition, they became liable to pay for what was actually delivered. This rule is established in numerous reported cases, and the question of waiver is frequently one of fact, to be determined by the circumstances and the evidence. * * * [Page 347.] Assuming, then, that the defendants, after accepting and appropriating the glass received by them, had a right to demand a delivery of the residue, the question arises whether they intended to insist that the remainder should be delivered before they

paid, or became liable to pay, for the portion which had already been received and accepted. Although they received and accepted a portion of the boxes of glass without actual knowledge that the balance would not be delivered [in this case the defendants had actual knowledge that a portion could not be delivered], the evidence shows that they used the glass without any notice to the plaintiffs that they insisted on a delivery of the remainder, or any reservation of the condition precedent. * * * [Page 348.] In no part of the correspondence did the defendants claim to take the position that they were not liable to pay for the boxes received in case the remainder was not delivered. They insisted [as in this case], until a final disagreement took place, that they were entitled to an amount, which was named, and which they stated that they charged to the plaintiffs' account, * * * for damages which they had sustained by reason of the nondelivery of the remainder, and not that they were not bound to pay for what had been delivered. They received part, negotiated for the residue not delivered, claiming damages in consequence thereof, and thus waived strict performance and admitted their liability for the price agreed upon, deducting the charge made for * * * damages. This position is inconsistent with the claim now made that they were not liable at all."

As was well stated by the learned judge in his charge to the jury, when the defendants took possession of the factory, and learned that the plaintiffs had removed a part of the goods covered by the bill of sale, and claimed a right to remove others, they had an election of remedies,—they could prevent a removal of any more goods, and assert that they were discharged from any liability to pay for what they had received unless the goods were returned; or they could permit the plaintiffs to remove more goods, and could require the damages they sustained from the nondelivery of the goods which had been removed to be offset against the price of the goods they had received. These remedies, however, are inconsistent, and, the defendants having chosen the latter, their right to pursue the former is gone forever, as an election once made is conclusive. Morris v. Rexford, 18 N. Y. 552; Rodermund v. Clark, 46 N. Y. 354; Fowler v. Bank, 113 N. Y. 450, 21 N. E. 172; Conrow v. Little, 115 N. Y. 387, 22 N. E. 346; Terry v. Munger, 121 N. Y. 161, 24 N. E. 272. On this branch of the case the appellants contend that the complaint should have been dismissed, because the market value of the goods had not then been proved, and because the plaintiffs could only recover on a quantum meruit. But, where the substantial performance of a contract has been waived by the defendant, the plaintiff is entitled to recover the contract price of what was done, less the defendants' damages resulting from what was left undone. Avery v. Wilson, supra; Parke v. Trading Co., 120 N. Y. 51, 23 N. E. 996; Heckman v. Pinkney, 81 N. Y. 211; McKnight v. Devlin, 52 N. Y. 399; Cassidy v. Le Fevre, 45 N. Y. 563, 566; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271; Flaherty v. Miner, 123 N. Y. 382, 25 N. E. 418. Where there has been a deviation from the terms of a contract by mutual consent, the contract price is to be paid for all work done under the contract. Clark v. Mayor, 4 N. Y. 338; Hollingshead v. Mactier, 13 Wend. 276; 2 Sedg. Dam. (8th Ed.) § 655. If the court was justified in refusing the motion to dismiss the complaint at the close of the plaintiffs' evidence, it certainly was justified in submitting the case to the jury at the close of all the testimony, because, we think, the

facts subsequently shown abundantly justified it in submitting the question of waiver to the jury.

We do not think the court erred in excluding the testimony of the witnesses Finch and Adler as to the condition of the building trade at the season of the year when the contract was entered into, and its demands for the class of material sold, or whether or not the defendants were compelled to mill up the stock into old iron, or whether the merchandise could be procured in the open market or manufactured within a reasonable time. It is quite true, as contended for by the appellants, that where there is no market for the article which is to be delivered, or it cannot be replaced, and cannot be had with reasonable diligence, and the buyer suffers damages because of the seller's failure to deliver, such special damage may be recovered. But, in order to entitle the plaintiff to such recovery, it is essential that such special damage be alleged in the pleading, and, if it be not alleged, it cannot be proved on the trial. Parsons v. Sutton, 66 N. Y. 92, 98, and cases cited.

The defendants in various forms requested the court to charge that the fact that neither Mrs. Brady nor Mr. Winterbottom testified on the former trials to any pointing out of goods agreed to be sold and marked with check marks was a suspicious circumstance, which the jury should take into consideration in weighing their credibility, inasmuch as the issues were the same upon the former trials as this. In the first place, the learned counsel for the appellants has fallen into an error in supposing that the issues were the same as upon the former trials, because, after the second trial, the complaint was amended in such a way as to set up the collateral agreement and the waiver. Besides, the reason the plaintiffs did not testify to this fact on the former trials was that they were not asked about it. In addition to this, the jury are the sole judges of the credibility of witnesses. Becker v. Koch, 104 N. Y. 394, 404, 10 N. E. 701; People v. Chapleau, 121 N. Y. 266, 275, 24 N. E. 469; Honegger v. Wettstein, 94 N. Y. 253; Thornt. Juries, § 133. Nor can the court instruct the jury as to the respective credibility of witnesses. Weaver v. Grant, 56 Hun, 104, 9 N. Y. Supp. 73; Uransky v. Railroad Co. (Sup.) 13 N. Y. Supp. 670. Thornt. Juries, § 133. In Massachusetts it has ever been held that it is improper to instruct the jury to receive the evidence of a detective with great caution (Com. v. Mason, 135 Mass. 555; Com. v. Trainor, 123 Mass. 414); and in this state it has been held that it was error to instruct a jury to find a particular verdict if they believed a particular witness (Dolan v. Canal Co., 71 N. Y. 285; Chapman v. Railroad Co., 55 N. Y. 579).

The court charged the jury as follows:

"If you find there was a defective delivery, and that the defendants, on discovering that incomplete delivery, did waive the incomplete delivery in the sense I have expounded the term to you,—that is, agree, consent, to take a partial and incomplete delivery, and to pay for that partial and incomplete delivery with the deduction for nondelivery of the residue,—then you will find a verdict for the plaintiffs."

It is now contended that this was error on the part of the court, but no exception was taken to this portion of the charge at the trial,

nor was its attention in any way directed to it at the time; and, although more than 30 requests to charge were made by the defendants, there was none asking for a different instruction on this point. We therefore do not think they can now be heard to allege this as error warranting a new trial in this action, even if the facts were as claimed by them. But we do not think that a fair construction of the testimony supports defendants' contention, and, having gone over this ground when considering the question of the dismissal of the complaint, we do not deem it necessary to rehearse what we there said.

Many other exceptions were taken to the charge as delivered and to the refusal to charge defendants' requests, and also to portions of the charge made at plaintiffs' request. But the astute and laborious counsel for the defendants did not argue any of them, either orally or in his brief, and we therefore assume that, in view of the verdict of the jury, and on reflection, he has concluded to abandon them, and we do not deem it necessary to examine them in detail.

Appellants also contend that the verdict of the jury was contrary to the weight of evidence, and that the motion for a new trial upon that ground should have been granted. But in our judgment there was no such preponderance of evidence as to lead us to believe that the jury were influenced by bias, passion, prejudice, or mistake; on the other hand, we think there was quite sufficient to warrant the verdict rendered. The judgment should therefore be affirmed, with costs. All concur.