THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ALBERT
MACKINDER and Another, Appellants.

*Confessions — their admissibility in evidence — when determined by the court, when by
the jury — error in admitting evidence, when disregarded upon appeal — Code of
Criminal Procedure, § 542.*

The confession made by a prisoner of the commission of a crime, when made
under the influence of fear produced by threats, is inadmissible in evidence, but
a confession voluntarily made by the defendant in a criminal action is compe-
tent evidence against him, although made when he was under arrest. If a con-
fession be induced by promises or reward, made particularly by any one hav-
ing immediate connection with the case, such inducement may vitiate the
confession.

When there is no conflict of evidence as to the circumstances under which the con-
fession of a prisoner was made, the question as to the admissibility of such con-
fession in evidence should be decided by the court, and not left to the jury.
But where there is a conflict of testimony or room for doubt the court should
submit the question to the jury, with instructions that if they are satisfied that
the confession was procured by threats or promises they should disregard and
reject it.

Under the provisions of section 542 of the Code of Criminal Procedure, upon
an appeal from a judgment convicting a person of a crime, an error by the trial
court in the receipt of evidence will be overlooked if the receipt of the same
could not have affected the substantial rights of the accused.

APPEAL by the defendants, Albert Mackinder and another, from
a judgment of the Court of Sessions held in and for the county of
Onondaga, rendered on the 7th day of December, 1893, convicting
them of the crime of robbery in the first degree, and also from an
order made on the 15th day of December, 1893, denying the
defendants' motion for a new trial.

The defendants were jointly indicted and tried together at a
Court of Sessions held in and for the county of Onondaga. They
were found guilty, and sentenced to imprisonment in the State
prison at Auburn for fourteen years. The crime of which they
were convicted was alleged to have been committed on the 13th day
of May, 1892, in the town of Camillus, Onondaga county, N. Y.

On the morning of that day, Royal E. Fox, who was cashier of
the Solvay Process Company, and one James Houser, left the office
of that company to go to Split Rock quarry to pay the men
employed by the company, who were at work at that place. They

went in a road cart drawn by one horse, and had with them $2,290.50 in envelopes in two wooden boxes. When they were passing along a private road to the quarry they were stopped by two masked men armed with revolvers who commanded them to hold up their hands, bound Fox and Houser, left them thus bound, and took the boxes and the money away with them. This transaction occurred at about nine minutes of ten in the morning of that day.

Subsequently, and on or about the 14th day of August, 1892, the defendants were arrested, and on the next day both made confessions admitting the commission of the crime.

*Hoyt & Farrington*, for the appellants.

*B. J. Shore* and *T. E. Hancock*, for the respondent.

MARTIN, J. :

The first and most important question involved upon this appeal relates to the admission in evidence of the confessions made by the appellants. They contend that these confessions were made under duress; were obtained by threats, were involuntary, and, therefore, inadmissible. If these confessions were made under the influence of fear produced by threats, then it is manifest that the court erred in admitting them in evidence, and, as there was no other sufficient evidence upon which to convict the defendants, the judgment must be reversed.

Thus, the important question to be determined is whether the confessions made by the defendants were voluntary, or were produced by fear engendered by threats of the officers having them in charge. On the trial considerable evidence was given upon the question. The evidence of the defendants was to the effect that these confessions were obtained by threats, and, if believed, was, perhaps, sufficient to show that the confessions were involuntary, and produced by threats and promises made by the officers in whose charge they were. The defendant Albert Mackinder testified that he was in the custody of the chief of police of Syracuse; that he told him that if he did not tell him the truth he would give him twenty years for perjury, and that he would apply to the court for him and get him off with a light sentence; that he would make him

out with a light sentence, and there was no good in his lying about it; that if he lied he would give him twenty years for lying; that the chief of police called him up and asked him if he was ready to tell the truth; that he told him he had told the truth; that the chief swore at him and called him a liar; that the chief said that there was no good of his lying about this, for those two men had been out and investigated this case, and if he didn't tell them all about it he would give him twenty years; that the two men were Mr. Hoxsie and Mr. Hancock; that the chief said he would lock him up until he did tell; that it would be better for him to tell him, and he would apply to the court and get him off with a light sentence; that upon the strength of what the chief said to him he signed the confession offered.

The defendant Frank testified that he was arrested in the forenoon of August fourteenth; that he had some conversation with the chief of police on that day, and that on the next day he asked the chief what he was arrested for, and he told him for highway robbery and an attempt at murder; that he then asked him if he could give bail, and he said he would not need bail for some time; that on that day Officer Kratz came where he was and asked him if he had anything to say, to which the defendant Frank replied, "No," that he did not know anything; that he was then taken to the office of the chief of police where Becker, Kratz, Hoxsie, Hancock and Wright were (Kratz and Becker were police officers, Hoxsie the sheriff, Hancock the district attorney and Wright the chief of police); that it was about ten o'clock in the forenoon; that Kratz and Becker said there was no use in his holding back, for they had all the evidence in the world against him; that they had a man that saw the gray hairs in his head; that Mr. Wright asked him if he had anything to say; that he said he didn't know anything; that he said he had an affidavit of the whole thing; that he asked him to read it, and he read over one affidavit; that he told him if he put anything down against him to put down the same as the rest; that he wrote it down and he signed it; that he did not read it over to him after he made it out; that that was all that took place with reference to the confessions; that Mr. Wright told him that his brother George had testified, and said that he had traded revolvers for blankets; that in signing that paper making the statement that

was offered he acted upon and was induced to sign it upon the statements that had been made to him by Becker and Kratz with reference to the disclosures that had been made by his brother, threats in reference to the affidavits, and believing that it would be better for him than to withhold his statement.

On the other hand, the People called as witnesses Officer Kratz, Chief of Police Wright and Sheriff Hoxsie, who testified as to what transpired prior to and at the time these confessions were made and signed by the appellants. The evidence of these witnesses tended to show quite conclusively that the confessions admitted in evidence were voluntary, were not made under the influence of fear produced by threats, or induced by any promise by such officers. It was proved by several of these witnesses that before either of these confessions was made or signed, the district attorney stated to the defendant making it that before he made any statement he wanted him to know that he did it of his own free will and accord, voluntarily, without any threats or promises of any name or nature, and the district attorney asked him if he understood it, and he said he did, and that it was after such statement to each of the defendants that the confessions offered in evidence were made, read over to each of the defendants, and signed by him.

The chief of police admitted that on the day when Albert Mackinder made the confession introduced in evidence, he said something to him about committing perjury; that he read him the law on the subject, and told him that he was a liar; but testified that he had no recollection of telling him he would be arrested for perjury, and thinks he did not, but would not undertake to say he did not; that he thought he told them it would be better for them to tell the truth; that he did not say that if they would tell the truth he would use his influence with the court to have their sentences lightened, but that he told Albert that the best thing for him to do was to tell the truth; that all thieves from bank robbers down to clothes line thieves squealed when they got in tight places; that he thought he did not say to Albert that he would ask the court for mercy for him if he would tell the truth about it, but that he would not swear that he did or did not; that he did not say that in substance to both of them. He also testified that this conversation was before the defendant Albert was informed of the charge against him, and related to his

statement as to his whereabouts, and where he obtained the money which he spent in going West, buying furniture, paying house rent, etc.; that he was not informed of the charge until the district attorney and the sheriff were present, and that it was after the district attorney had said to him that before he made any statement he wanted him to know that he did it of his own free will and accord, voluntarily, and that the confession was made without any threats or promises of any name or nature.

After the introduction of the evidence upon both sides bearing upon the circumstances under which these confessions were made, the court admitted them in evidence.

In submitting the case to the jury the court said : " It was the duty of the court at the outset to pass upon the question particularly whether these instruments or statements, called confessions, should be received in evidence or not. The court has performed what it deemed its duty in that regard, and they have been received, but that is not conclusive upon you. You are now, as a jury, to pass upon the question whether they do come within the law permitting them to be received as evidence against the defendants, and I will read you the statute itself which lays down the rule as to the confessions and their reception. ' A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless,' and this is the exception, ' made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor; but is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed.' In other words, that the crime itself has been committed by somebody. The authorities go a little further than the statute itself, and authorities which I think this court is bound to regard. The statute itself says, as I have read, that such confessions can be given, unless made under the influence of fear produced by threats. That is one thing. Or, unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor. That is another thing. But the cases themselves go a little further and say, in effect, that if they are induced by promises or reward, particularly by anybody having immediate connection with the case, such inducement may vitiate the confession. Now, gentlemen, you

have heard the testimony on this branch of the subject very fully, you are able to sift it out and reach some conclusion as to what the truth is about the obtaining of these confessions. The fact that these defendants were in confinement is not duress in the sense of making the confession valueless. The fact that they were prisoners, of itself, does not vitiate the confessions. · The question is, whether the confessions were made voluntarily, without threats, without induce- ments, without promises, whether they had been imprisoned one day or more — but you are to take into consideration all the facts and cir- cumstances surrounding their imprisonment to determine the question whether there were threats or inducements or promises. If you believe these confessions should be rejected as valueless and as against the law as I have stated it to you, then, as I said before, it would be your duty to acquit these defendants on the evidence that is in this case. If, on the other hand, you accept and receive in evidence and conclude that these confessions were properly obtained and are right and proper evidence in this case, then it is for you to say whether they substantiate the charge beyond a reasonable doubt, taken in connection with other testimony in the case — substantiate the charge that these defendants were guilty of the crime charged in the indict- ment. One other thing I must call your attention to — each confes- sion is to be taken, if taken at all, as against the one who makes it, and not as against the other."

While, perhaps, the evidence shows that the chief of police who had these defendants in charge was more zealous than wise in trying to obtained from the defendant Albert Mackinder a true statement as to where he obtained the money that he had expended in travel- ing, in the purchase of furniture and for other purposes, and that his language to the prisoner was not commendable, and while it may be that if the defendant Albert had then been informed of the charge made against him and his confession had been procured at that time and before he was apprised of the fact that no promises or threats should be considered by him in making such confession, it would have been inadmissible, yet, as the evidence was to the effect that the con- fession was not made at that time and not until he had been expressly informed by the district attorney that if he made any statement it must be voluntary, made of his own free will and accord, and without any threats or promises, and not until after he

had stated that he understood that any statement he might make was to be voluntary, unaffected by any threat or promise of any kind, we are of the opinion that the court properly admitted the confessions in evidence, and properly submitted to the jury the question whether they were obtained through the influence of fear produced by threats or by reason of any promises made by the officers having the defendants in charge.

Section 395 of the Code of Criminal Procedure provides: "A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney that he shall not be prosecuted therefor."

In *The People* v. *Mondon* (103 N. Y. 211, 219) it was said: " The rule thus established (§ 395) is founded upon the common-law rule on the subject of confessions, but is much more definite and stringent. The rule as laid down in Hawkins is stated to be that a confession, whether made under an official examination or in discourse with private persons, which is obtained from a defendant either by the flattery of hope or by the impression of fear, however slightly the emotions may be implanted, is not admissible in evidence." By the section of the Code quoted, the fear which is required to exclude the confession must be a fear produced by threats, and the hope must be based upon the stipulation of the district attorney promising immunity from prosecution for the crime confessed." A confession made by a defendant in a criminal action voluntarily, is competent evidence against him, although made when he was under arrest. (*Cox* v. *The People*, 80 N. Y. 500, 515; *The People* v. *McGloin*, 91 id. 241; *The People* v. *Druse*, 103 id. 655; *People* v. *Chapleau*, 121 id. 266.) A statement by a police officer to a prisoner, after she knew she was suspected of the crime, that "they had found enough to convict her; she might as well own up," was held not to be a threat within the meaning of section 395. (*People* v. *McCallam*, 3 N. Y. Cr. Rep. 189. See, also, *The People* v. *Wentz*, 37 N. Y. 303; *Cox* v. *The People*, 80 id. 500; *The People* v. *McGloin*, 91 id. 241.)

Where there is a conflict in the evidence as to the circumstances under which such statements were made, the question of their

admissibility in evidence should be decided by the court and not left to the jury. ( *Willett* v. *People*, 27 Hun, 469.) But where there is a conflict of testimony or room for doubt, the court should submit the question to the jury with instructions that if they are satisfied that the confession was procured by such inducements that they should disregard and reject it. (*People* v. *Kurtz*, 42 Hun, 335 ; *People* v. *Fox*, 121 N. Y. 449, 453 ; *People* v. *Cassidy*, 133 id. 612.)

Within the doctrine of these authorities we think it is obvious that the question whether the confessions of the defendants were improperly procured was for the jury ; that it was justified in finding that they were not, and, consequently, justified in finding the defendants guilty of the offense charged in the indictment.

The appellants also contend that the court erred in permitting the witness George A. Mackinder to testify as to the number of pistols he sold the defendant Albert Mackinder. The question was asked and answered before any objection was taken, and there was no motion to strike out the answer. Moreover, we think the evidence was admissible, and that the exception was not well taken.

On the cross-examination of the witness George A. Mackinder, who had testified to having sold his brother Albert two pistols about two and one-half months before the robbery, he was asked : " What did you let him have the pistols for ? [Objected to.] The Court : Do you mean whether he sold them to him or not ? Mr. Kennedy : No, sir ; the purpose he let him have the pistols for. Mr. Hancock : I object to that. The Court : The objection is sustained. [Exception taken by defendants' counsel.] " The defendants contend that the court erred in rejecting this evidence. As I construe the question of the defendants' counsel, it called for the purpose or motive of George in letting his brother have the pistols. It is not quite apparent how evidence of his purpose was admissible. If it was, the defendants' counsel should have explained to the court how. If, however, I am wrong in construing the object of the question, and it should be construed as calling for the purpose of Albert in buying them, then it would seem that the witness could not have known his purpose unless Albert stated what it was, and thus the evidence would have been at most the declaration of the defendant in his own favor. But, be that as it may, if it be admitted

that this evidence ought to have been received in explanation of the evidence of the witness given upon his direct examination, and that it was error to exclude it, it is obvious that the error was harmless, as the court clearly and positively instructed the jury that unless it found that the defendants' confessions were voluntary they could not be convicted. As section 542 of the Code of Criminal Procedure provides that the court must give judgment, without regard to technical errors or to defects or to exceptions which do not affect the substantial rights of the parties, it follows, we think, that if this ruling was erroneous, it should be disregarded, as it could not have affected the substantial rights of the defendants.

On the trial the prosecution asked the witness Purnell, who had testified to having seen the defendant Frank Mackinder after the robbery and the same month he was arrested, the following question : " Now, state whether he had a quantity of money he was displaying there in your shop." This was objected to as " incompetent and improper, and immaterial, and too remote." The objection was overruled, and the defendants excepted. We think there was no error in receiving this evidence.

The People were also permitted, under the defendants' objection that the evidence was incompetent, immaterial and not a part of the *res gestæ*, to prove by the witness Hoxsie that, in a conversation which took place after the statement or confession had been made by Frank Mackinder, that he had said to him, " Frank, would you have shot those men that morning ?" to which he said : " I don't know ; I was pretty nervy that morning." From an examination of the appeal book it would seem that this conversation took place at the time that the statement by Frank Mackinder was made, and amounted at least to an admission that he was there at the time the offense was committed. We think the evidence was admissible. If not, we are unable to see how, under all the evidence in the case, its reception was prejudicial to the defendant. Section 542 of the Code of Criminal Procedure provides : " After hearing the appeal the court must give judgment, without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties." If the confessions made by the defendants were believed by the jury, they were entirely sufficient to justify the verdict, and if they were not believed, the jury was instructed by the

court that it could not find a verdict against them, so that the question of the guilt or innocence of the defendants was made dependent upon the validity of the confessions, and this evidence could have in no way affected the result. (*People* v. *Chacon*, 102 N. Y. 669; *People* v. *Dimick*, 107 id. 13.)

We have examined the defendants' exception to the remarks of the court during the discussion as to the admission of the confessions of Frank Mackinder, but find nothing in that exception that requires us to disturb the judgment, and discover nothing in the statement of the court that could have been prejudicial to the defendants.

The following appears in the appeal book: "Mr. Kennedy : I desire to have it go upon the record that counsel has made a statement that a young man of slight build, about twenty-six years old, got upon a train with a revolver and committed one of the most infamous crimes known, and that he is now in prison for ninety-nine years. Mr. Hancock : More or less. Mr. Kennedy : I desire to except to that statement, and I now ask that a juror be withdrawn and that the case go over the term. The Court : That is denied. [Exception taken by defendants' counsel.]" From this statement we are unable to discover that any error was committed, or that the court erred in denying the defendants' request.

Having now considered all the exceptions suggested by the learned counsel for the defendants upon their brief, and having found none that would justify us in reversing the judgment, it follows that the judgment and order denying the defendants' motion for a new trial should be affirmed.

HARDIN, P. J., and MERWIN, J., concurred.

Conviction and judgment of the Court of Sessions of Onondaga county affirmed, and after the judgment is entered in the judgment book, a certified copy of this entry shall be forthwith remitted to the clerk of Onondaga county, with whom the original judgment roll is filed, in accordance with section 547 of the Code of Criminal Procedure.